JAMES M. WHITE *vs.* DAHLQUIST MANUFACTURING
COMPANY & others.

SAME *vs.* EDWARD B. DAHLQUIST & another.

Suffolk.    May 6, 1901. — June 20, 1901.

Present: HOLMES, C. J., KNOWLTON, LATHROP, HAMMOND, & LORING, JJ.

*Frauds, Statute of,* Memorandum.  *Auction,* Deposit, Authority of Auctioneer.
   *Agency.   Estoppel,* By conduct.

In order to satisfy the statute of frauds, a memorandum of a contract for the sale
   of lands, need not name or describe the vendor, if it is signed by an agent acting
   for him.

Under Pub. Sts. c. 78, § 1, cl. 4, and § 2, the consideration for the promise sought
   to be enforced need not be stated in the memorandum, even in the case of a
   contract for the sale of lands.

At an auction sale of lots of real estate the terms of sale required a "deposit" of
   $100 upon each sale.  In a suit in equity by a purchaser of two separate prop-
   erties at the sale, to enforce the contract to convey the lots to him, it appeared,
   that the defendant had placed the two properties with the auctioneer for sale;
   that immediately after the auction a memorandum of one of the plaintiff's pur-
   chases was given to him by the auctioneer, and the plaintiff gave to the auctioneer
   his check for $100, the defendant being present; that the auctioneer told the
   plaintiff that it would be time enough to bring the $100 for the other purchase
   the next day; that the next day the plaintiff brought to the auctioneer his check
   for $100 upon his second purchase and received a memorandum of that purchase
   signed by the auctioneer; and that the auctioneer cashed both checks and obtained
   the money.  *Held,* that a check so given and accepted fairly might be said to
   be a deposit within the general understanding of the word as used at sales by
   auction.  *Held, also,* that the signing of the memorandum by the auctioneer on
   the day after the sale was good for the purpose of satisfying the statute of
   frauds, his agency for the seller still existing.

Because an auctioneer is the agent of both seller and buyer for the purpose of sign-
   ing a memorandum of a sale made by him, it does not follow that his agency
   for the one is coextensive in its nature and duration with that for the other.
   His agency for the buyer is usually conferred when the bid is accepted and be-
   gins with the fall of the hammer.  Such an authority must be exercised contem-
   poraneously with the sale.  But the auctioneer's agency for the seller is generally
   more extensive and may cover a time both before and after the sale.  When such
   authority exists and is not revoked, the auctioneer may bind the seller by a
   memorandum signed within a reasonable time.

In an action to enforce a contract of the defendant to convey certain land to the
   plaintiff, it appeared, that the plaintiff visited the office of the defendant's counsel
   who in the presence of the defendant gave the plaintiff a draft of a deed of the
   land prepared for execution by the defendant and by his wife as releasing dower,
   to take to the plaintiff's conveyancer who was to examine the title.  Later the
   plaintiff demanded a deed of the land which the defendant refused.  Neither the

plaintiff nor his attorney had returned the draft and so far as appeared had re-
tained it in their possession.   *Held,* that the plaintiff by his retention of the
draft in no way lost his right to require a deed.

TWO BILLS IN EQUITY, one, to compel the defendant Edward
B. Dahlquist to convey to the plaintiff certain lots of land num-
bered 15, 17 and 19 on Bolton Street in that part of Boston
called South Boston belonging to the said defendant and con-
veyed to him by an unrecorded deed of the defendant the Dahl-
quist Manufacturing Company, and to compel the defendant,
Mary E. Dahlquist, wife of said Edward, to execute a release of
dower in the said land, and the other, to compel Mary E. Dahl-
quist to convey to the plaintiff a certain lot numbered 40 on
Third Street in said part of Boston belonging to the said Mary,
and to compel Edward B. Dahlquist to join in said conveyance
as her husband, filed respectively January 6, 1899, and Decem-
ber 8, 1898.

The answers in both cases set up, that there was no memo-
randum in writing of the contract of sale alleged in the plaintiff's
bill signed by the party to be charged therewith or by some per-
son thereto by him lawfully authorized, as required by Pub. Sts.
c. 78, § 1.

The Superior Court gave a decree for the plaintiff in each
case, ordering the performance of both contracts alleged; and
in each case the defendants Edward B. and Mary E. Dahlquist
appealed.

It appeared by the evidence which was printed by agreement,
that in each case the land in question was offered at auction
through one Hogan as auctioneer and that the plaintiff was the
highest bidder and complied with the terms of the sale.   As to
the sale of the lots on Bolton Street, Hogan testified, that the
following instrument was signed by him and by the plaintiff,
and that no change was made in the instrument after it was
signed, except that " James M. White", the plaintiff's name, in
the first line of the agreement, was filled in afterwards by a girl
in the office.   The instrument was as follows: "South Boston,
November 22, 1898.   I Hereby Acknowledge, That James M.
White has been this day declared the highest bidder and pur-
chaser of a certain piece or parcel of land with building thereon
situated in that part of Boston called South Boston, being num-

bered 15, 17, 19 Bolton street, in said South Boston. Building of brick two stories high. Lot of land 40 × 55 for the sum of Twenty-seven Hundred Dollars; and that he has paid into my hands the sum of One Hundred Dollars, as a deposit, and in part payment of the purchase money ; and I hereby agree that the vendor shall in all respects fulfil the conditions of sale. John Hogan.

"And I hereby agree to pay remaining sum of Twenty-six hundred Dollars, unto the vendor, on or before the 30th day of December, 1898. James M. White."

The plaintiff testified, that at the time of one of the interviews described by him he received from the defendants' counsel an unexecuted draft of a deed of the Bolton Street property from Edward B. Dahlquist, to the plaintiff, with a clause releasing the dower of Mary E. Dahlquist. The plaintiff testified to a subsequent tender of the balance of the purchase money due under the agreement made by him to Dahlquist and to Dahlquist's counsel, Mr. French, at Mr. French's office, and that he demanded a deed of the property. On cross-examination he testified, that the first time he went to Mr. French's office, Mr. French had the draft of the deed mentioned above and submitted it to the plaintiff, to take to his conveyancer to examine the title, and that he never returned it to Mr. French; also, that as far as he knew nobody had ever expressed any opinion with reference to the title or with reference to the deed, either to Mr. French or to Mr. Dahlquist, and as far as he knew he or his counsel had kept this draft of a deed ever since that time, and that he did not have the draft of the deed in his possession at the time he called at Mr. French's the day he made the tender.

There also was evidence of a tender by the plaintiff of the balance of the purchase money for the Third Street property. The memorandum of the sale of this property delivered to the plaintiff by the auctioneer was as follows: "Nov. 23d 1898. Received of James M. White One hundred dollars deposit on sale by auction of No. 40 Third street, South Boston. John Hogan."

Hogan testified among other matters as follows: "The Third Street property and the Bolton Street property are really adjoining property and are connected. There were about the same

number of people at the sale on Third Street. Most of the people stayed from the beginning to the end of the sales. There were six bids on the property at 40 Third Street. Mr. White was the highest bidder, and his bid was $900. I declared him to be the purchaser at that sale. Nothing was said at that sale when the papers were to be passed. I received a check for $100 from Mr. White on the first purchase, the Bolton Street property. I indorsed the check and have the money in the bank. I did not receive any money from him for 40 Third Street at the time of the sale, and Mr. White said he would get me a check. I told him he had no need to as I had already received $100 that bound it. I said, 'You can bring that up in the morning.' It was a November day and it was getting a little late, and I was supposed to sell all the machinery in the building, after selling the building. I told Mr. White I did not want him to bother to run down to his office and back, and that in the morning it would be time enough to bring up the $100. The next morning I received, at my office, a check for $100, and have obtained the money on both of these checks. On the next following morning I gave Mr. White no papers at my office. I gave him a paper at the sale, after knocking down 15, 17 and 19 Bolton Street to him. This paper was an agreement that he was the highest bidder, and I had so declared him [identifying the memorandum in regard to the Bolton Street lots printed above]. The next morning I gave him the paper marked [the memorandum in regard to the Third Street lot], when he gave me his check for $100. At time of sale of 15, 17 and 19 Bolton Street, I stated that buyer had until on or before December 30."

On behalf of the defendants, it was contended : 1. That the auctioneer exceeded his authority by accepting a check; that, whether the auctioneer was instructed to receive only " cash " or no instruction was given as to mode of payment, he could only accept cash, and a check is not cash; and that for this reason both contracts were void. 2. That the memoranda were not sufficient because they did not name or describe the owner of the premises. 3. That the memoranda were not sufficient because they did not contain the material terms of the contract. 4. That the memorandum of the sale of the Third Street property

was not sufficient, because not signed on the spot and at the time of the sale, and was not signed until the following morning. 5. As to the sale of the Bolton Street property described in the first entitled cause, the defendant Edward B. Dahlquist contended that, in addition to the other defences above specified, the retention of the draft of the deed, furnished to the plaintiff by the defendant through his counsel, excused him from making the conveyance of that parcel.   6. As to the sale of the property described in the second entitled cause, the defendant Mary E. Dahlquist contended that her knowledge of and acquiescence in the sale was not enough under the circumstances to estop her from repudiating the subsequent acts of the auctioneer.

*Asa P. French & G. W. Abele*, for the defendants.

*M. J. Creed & J. P. Crosby*, for the plaintiff.

HAMMOND, J.   The defendants contend that each memorandum is insufficient under the statute of frauds because as they allege it does not name or describe the owner of the land sold and some other material parts of the contract.

It is not always necessary that the memorandum should name or describe the owner.  Where, as in a case like this, it is signed by a person who is in fact an agent and acting as such, the existence and identity of the principal may be proved by parol, and he may sue or be sued upon the contract.  *Williams* v. *Bacon*, 2 Gray, 387.   *Lerned* v. *Johns*, 9 Allen, 419.   *Gowen* v. *Klous*, 101 Mass. 449.

It has also been settled by this court that, whatever may be the doctrine elsewhere, under our statute the consideration for the promise sought to be enforced need not be stated in the memorandum even in the case of a contract for the sale of real estate.   Pub. Sts. c. 78, § 1, cl. 4, and § 2.   *Hayes* v. *Jackson*, 159 Mass. 451.

While the memorandum says nothing about the taxes or the time within which the contract should be carried out, it may be said that the evidence as to what the contract was upon those points was conflicting and it would warrant a finding that there was no definite agreement upon them, and the Superior Court may have so found.  As to the mortgage on the Bolton Street property, it was at most at the option of the purchaser whether it should be paid or not by the seller, and it appears by the

memorandum that the seller has in substance agreed to pay it. There is nothing in it inconsistent with the terms of the sale, but it simply shows that the purchaser had made his election and the seller had agreed to be bound by it. So far as respects the mortgage, therefore, the memorandum contained the contract of sale as finally agreed upon, in accordance with the option given to the purchaser at the time the property was struck off to him.

As to the contention that one of the terms of the sale was that there should be a cash payment of $100 on the spot at the time of the sale, and that the auctioneer had no authority to take a check instead of money, it may be said that the whole testimony taken together would seem to indicate that the auctioneer called for simply " a deposit " of $100, and that the defendant was present acting for himself and as the agent of the wife, and heard the declaration and made no objection to it. It appeared that the plaintiff gave his check for that amount to the auctioneer for the Bolton Street property, and another check for the same amount the next day for the Third Street property ; that both checks were good and were duly honored. Such a check, if satisfactory to the seller or the auctioneer, may fairly be said to be a deposit within the general understanding of the phrase as used in sales by auction.

It is still further objected that as to the Third Street estate the memorandum was not signed until the next day, and that the auctioneer had no authority at that time to bind the defendants. The general rule is that the memorandum may be signed at any time subsequent to the formation of the contract, at least before action brought. Browne, St. of Frauds, § 352 *a*, and cases cited. *Lerned* v. *Wannemacher*, 9 Allen, 412, 416. *Sanborn* v. *Chamberlin*, 101 Mass. 409, 416. And this rule is applicable where the contract is made by an agent and the subsequent memorandum is signed by him during the existence of his agency. It has been sometimes thought that there is an exception to this rule in the case of auctioneers (see the authorities referred to in Browne, St. of Frauds, § 353,) but the exception is more apparent than real. The question does not turn upon the fact that the agent is an auctioneer but upon the scope and duration of the agency. While it is said that an auctioneer

is the agent of both seller and purchaser for signing the con-
tract, it does not follow that his agency for the one is coexten-
sive in its nature and duration with that for the other.  The
word "auctioneer" is sometimes used to designate the crier who
simply calls for bids and strikes the bargain at an auction sale.
His connection with the sale may begin with calling for bids
and end with striking the bargain.  If that be the only authority
given him by seller and purchaser, it may be said that while the
power to strike the bargain fairly imports authority to make his
work effectual by signing the memorandum necessary to bind
the parties, it also implies that that act shall be substantially
contemporaneous with the sale and as a part of it.  In such a
case the agency of the auctioneer is substantially ended with
the auction, and his authority to bind either party by a memo-
randum would not extend beyond that time.  And so far as
respects the purchaser, the authority of the auctioneer as a
usual rule is confined to the actual time of the auction.  It is
conferred by the bid when accepted, and therefore begins with
the fall of the hammer.  The technical ground is that the pur-
chaser by the very act of bidding "calls on the auctioneer or
his clerk to put down his name as the bidder, and thus confers
an authority on the auctioneer or clerk, to sign his name, and
this is the whole extent of the authority."  Shaw, C. J., in *Gill*
v. *Bicknell*, 2 Cush. 355, 358.  Such an authority must be ex-
ercised contemporaneously with the sale.  See Browne, St. of
Frauds, § 353, and cases cited in the notes.

But primarily and actively the auctioneer as a rule is the agent
of the seller, and as to him his authority is generally more ex-
tensive, and may cover a time both before and after the sale.  Fre-
quently the property is put into his hands for sale, and all the
details are left entirely to him.  He is expected to make all the
arrangements by way of public advertisement and otherwise, and
to act fully at the sale, to receive the deposit from the purchaser
and to carry the transaction to the end.  Such authority from a
seller to an auctioneer does not end with the auction sale but
extends beyond it, and until it is revoked the auctioneer may
properly bind the seller by a memorandum signed within a rea-
sonable time.  He does this not simply because he is the crier
at the sale, but because his agency by the fair understanding

between him and the seller extends to the final consummation of the contract, and is not affected by the fact that he also acts as crier.

In the present case Hogan the auctioneer testified that he was in the real estate and insurance business and had been for several years, that a week or ten days before the sale Dahlquist "placed the property with me for sale." Hogan advertised it by means of handbills and newspapers, and seems to have been given full authority to sell the property, subject to instructions as to price. He received and kept after the auction the deposits made by the purchasers, and the evidence would fully warrant a finding that the understanding was that his agency for the defendants should continue until the sale was completed, and that it had not been revoked at the time Hogan signed the memorandum. Upon such a finding the general rule applies, and since Hogan was acting during the continuance of his agency, he could properly bind his principals by signing the memorandum.

While the defendant Mary E. Dahlquist does not appear actively in the case, the evidence sufficiently shows that her husband had authority to act for her, as owner of the Third Street property, and she is bound.

There is no merit in the objection that the plaintiff did not return to the defendants the deed which had been drawn up for their signature.

*Decree affirmed in each case.*