ARTHUR M. CLARK *vs.* JOHN OLEJNIK & another.

Franklin.   September 21, 1921. — November 28, 1921.

Present: RUGG, C.J., DE COURCY, CROSBY, CARROLL, & JENNEY, JJ.

*Frauds, Statute of. Contract,* For sale of land. *Agency,* What constitutes. *Auctioneer.*

From a report by the trial judge, after a verdict had been entered for the defendant in an action of contract by the owner of land against one J. O. for the amount at which, it was alleged, the land was struck off to the defendant at a public auction, the following facts appeared: The plaintiff had advertised in newspapers certain parcels of land and certain personal property for sale at public auction and had posted notices, the advertisements and notices stating in the English language, among other things, that certain buildings with twenty acres of land "east of highway" would be sold in one transaction and that meadow land would be divided into seven five-acre lots and sold separately, that the auction would occur at ten o'clock in the forenoon upon a certain day, and lunch at noon was advertised. The twenty acre tract with buildings was struck off to the defendant and the auctioneer's clerk immediately wrote upon one of his loose sheets having no special caption in its order of sale, "J. O. — Real Estate — Home place — $12,300." At the time of the sale the notice and advertisement were not mentioned and the auctioneer in stating the terms of the sale made no mention of them. The defendant saw the posted notices but could not read English. The defendant testified, "I see the house at the place where the auction was to be. Heard auctioneer sell the property. Auctioneer said he was going to sell home place. Was then to sell land on east side of road. The auctioneer sold some furniture before offering home place." The record then contains this statement: "Immediately, after the close of the sale on that day, the auctioneer and the clerk went into the house and then, in the absence of the male defendant the auctioneer executed the instrument, of which the following is a copy: ' . . . Sold this day at auction home place of . . . [the plaintiff] to . . . [the defendant] he being the highest bidder at the auction. Price, $12,300. Signed by me as agent for seller and buyer.'" [Here followed the auctioneer's signature]. *Held,* that

(1) There was no evidence tending to connect the advertisements and notices of the sale with the memorandum made by the auctioneer's clerk, and that memorandum alone, containing no description of the property sold nor the name of the vendor, was insufficient to bind the defendant;

(2) The report of the trial judge must be construed to mean that, after the home place was put up for sale first, the other seven five-acre lots were put up and sold and then, at the end of the entire sale of everything, both real and personal property, the auctioneer went into the house and made his memorandum;

(3) The authority of the auctioneer to sign a memorandum in behalf of the purchaser was confined to the actual time of the auction and could not be exercised "after the close of the sale on that day;"

(4) The memorandum made by the auctioneer was not binding upon the defendant;

(5) The statute of frauds, G. L. c. 259, § 1, cl. 4, was an effectual defence to the action.

CONTRACT against Katherine and John Olejnik for alleged breach of an agreement by the defendants to purchase certain land of the plaintiff for $12,300. Writ dated November 18, 1920.

The defendants' answer contained, besides a general denial, an allegation that "neither the agreement on which such action is brought, nor any note or memorandum thereof is in writing and signed by them or either of them, or by any person thereunto by them or either of them lawfully authorized."

In the Superior Court the action was tried before *Fessenden*, J. At the close of the plaintiff's evidence the defendants rested and, upon motion by the defendants' counsel and without objection by the plaintiff, the judge ordered a verdict for the defendant Katherine Olejnik. Proceeding further against the defendant John Olejnik, the judge then ordered a verdict in his favor and at the request of the parties reported the action for determination by this court, upon the following conditions: if his ordering of a verdict for the defendant John Olejnik was right, judgment was to be entered in favor of the defendant John Olejnik; "otherwise, final judgment for the plaintiff in the sum of $1,000."

*H. J. Field*, for the plaintiff.

*F. L. Greene*, for the defendants.

CARROLL, J. This case is before us on a report by a judge of the Superior Court. A verdict was directed for the defendant Katherine Olejnik without objection by the plaintiff, and at the close of all the evidence a verdict was directed for the defendant John Olejnik and the case reported upon these conditions, that if the ruling of the judge was right judgment was to be entered for the defendant John Olejnik, otherwise judgment was to be entered for the plaintiff in the sum of $1,000.

The action is in contract and the answer sets up the statute

of frauds. The plaintiff over his printed signature advertised the property to be sold at public auction, by bills posted in nearby locations and by advertisements in a weekly paper. The announcements stated that certain buildings with twenty acres of land "east of highway" would be sold in one transaction, and the meadow land would be divided into seven five-acre lots and sold separately. The auction was to take place at ten o'clock in the forenoon of November 16, 1920, and lunch at noon was advertised. According to the report other parcels of real estate than the one here involved and some personalty were sold. All that the report discloses as to the order of sale is in these words: "The tract of 20 acres east of the road, . . . with buildings thereon, and announced by the auctioneer as the home place, was struck off to the male defendant by the auctioneer; and the auction clerk immediately wrote upon one of his loose sheets, having no special caption, in its order of sale, as follows:— 'John Olejnik — Real Estate — Home place — $12,300.'" We pause to discuss the sufficiency of this memorandum. In point of time it was seasonably executed so as to bind the purchaser. This memorandum, however, standing by itself is insufficient to take the case out of the statute. It contains no description of the property sold and the name of the vendor does not appear. The loose sheet upon which the memorandum was written had no special caption indicating the name of the owner or describing the property sold. The plaintiff contends that the printed advertisement of sale containing the owner's name may be read in connection with the memorandum of the clerk so as to make a complete memorandum of sale. It appeared in evidence that the defendant saw the posted notice of sale but could not read English. At the time of sale the notice and advertisement were not mentioned and the auctioneer in stating the terms and conditions of sale made no reference to them; they therefore did not bind the parties. *Kennell* v. *Boyer,* 144 Iowa, 303. Under the modern rule different papers may be so connected that taken together a memorandum sufficient to satisfy the statute of frauds is established, but there must be some evidence that the papers were connected in the minds of the parties so that they adopted all the papers as indicating their purpose. In the case at bar there is no evidence tending to connect the different papers, neither refers to the other,

and they are in fact independent documents and were not so united in the minds of the parties that it could be found that taken together they express their purpose. *Nickerson* v. *Weld*, 204 Mass. 346, 356. *Lee* v. *Butler*, 167 Mass. 426.

The summary of the defendant's testimony contained in the report is as follows: "'I see the house at the place where the auction was to be.' Heard auctioneer sell the property. Auctioneer said he was going to sell home place. Was then to sell land on east side of road. The auctioneer sold some furniture before offering home place." Then follows this statement: "Immediately after the close of the sale on that day, the auctioneer and the clerk went into the house and then, in the absence of the male defendant the auctioneer executed the instrument of which the following is a copy: 'Sunderland, Mass Nov. 16, 1920. Sold this day at auction home place of Arthur M. Clark to John Olejnik of Whately, Mass., he being the highest bidder at the auction. Price, $12,300. Signed by me as agent for seller and buyer. William B. Avery.'" This memorandum was sufficient in form to satisfy the statute of frauds; and if the auctioneer had at the time it was made authority to bind the purchaser, it did in fact bind him.

The first question to be decided on this branch of the case is what this evidence means as matter of interpretation of a judicial report. We think it means that after the home place was put up first, thereafter the other seven five-acre lots were put up and sold and then at the end of the entire sale of everything, both real and personal property, the auctioneer went into the house and made the memorandum. The words "the close of the sale on that day" mean the close of the sale as a whole including the several lots of real estate and the remaining personal property of which only "some furniture" had theretofore been sold, leaving to be sold after the real estate the farm machinery, stock, horses, cow, hay, corn, etc. This interpretation is confirmed by the statement that the clerk made his entry "in its order of sale" that is, in the order in which the several lots of real estate and personal property were sold.

The important question as to the memorandum made by the auctioneer himself, is whether he had authority in view of these facts to bind the purchaser at the time when the memorandum was made. Whatever may be the extent of the authority given

to the auctioneer by the seller, as far as respects the purchaser, the authority of the auctioneer, as a general rule, does not extend beyond the time of sale. As was said by Chief Justice Shaw in *Gill* v. *Bicknell*, 2 Cush. 355, at page 358: "It is now well settled, by authorities, that a sale of real estate at auction, where the name of the bidder is entered by the auctioneer, or by his clerk, under his direction, on the spot, and such entry is so connected with the subject and terms of sale, as to make a part of the memorandum, is a contract in writing, so as to take the case out of the statute of frauds. The true reason probably is, that a sale at auction, being open and visible and in presence of witnesses, either competitors, or persons present and closely watching the proceeding, there is less danger of fraud and perjury, in proving the making and terms of the contract, and so the main reason for requiring a memorandum in writing does not exist. The technical ground is, that the purchaser, by the very act of bidding, connected with the usage and practice of auction sales, loudly and notoriously calls on the auctioneer or his clerk to put down his name as the bidder, and thus confers an authority on the auctioneer or clerk, to sign his name, and this is the whole extent of the authority." It is to be noted in this connection, that the significant words "on the spot" are used in speaking of the time when the entry of the bid is to be made.

In *White* v. *Dahlquist Manuf. Co.* 179 Mass. 427, Mr. Justice Hammond calls attention to the difference in the authority conferred upon the auctioneer by the owner who promotes and sets up the auction and the buyer who has only the casual and temporary relation established by the auction itself, and he says, pages 432, 433: "While it is said that an auctioneer is the agent of both seller and purchaser for signing the contract, it does not follow that his agency for the one is coextensive in its nature and duration with that for the other. The word 'auctioneer' is sometimes used to designate the crier who simply calls for bids and strikes the bargain at an auction sale. His connection with the sale may begin with calling for bids and end with striking the bargain. If that be the only authority given him by seller and purchaser, it may be said that while the power to strike the bargain fairly imports authority to make his work effectual by signing the memorandum necessary to bind the parties, it also implies

that that act shall be substantially contemporaneous with the sale and as a part of it. In such a case the agency of the auctioneer is substantially ended with the auction, and his authority to bind either party by a memorandum would not extend beyond that time. And so far as respects the purchaser, the authority of the auctioneer as a usual rule is confined to the actual time of the auction. It is conferred by the bid when accepted, and therefore begins with the fall of the hammer." Taking into account these words, that the authority of the auctioneer "is confined to the actual time of the auction," in our opinion it could not be exercised "after the close of the sale on that day." The auctioneer could not on the facts shown in this report as we interpret it, after the sale was ended and in the absence of the bidder, bind him by signing the memorandum. The auctioneer was at that time without authority to bind the purchaser. *Gill* v. *Bicknell, supra. White* v. *Dahlquist Manuf. Co. supra. Horton* v. *McCarty,* 53 Maine, 394. *Bell* v. *Balls,* [1897] 1 Ch. D. 663, 671. *Smith* v. *Arnold,* 5 Mason, 414. *Bamber* v. *Savage,* 52 Wis. 110, 113. See *Craig* v. *Godfroy,* 1 Cal. 415; *Schmidt* v. *Quinzel,* 10 Dick, 792.

In *Shapira* v. *D'Arcy,* 180 Mass. 377, there was evidence that the auctioneer signed the papers relied on in a store near to the place of sale, where the parties had gone to have the memorandum prepared and the money paid. In the case at bar there is no evidence to show that the auctioneer had any special authority from the purchaser to act for him at another time and place and in his absence, or from which it could be inferred from his presence and conduct that he consented to the act of the auctioneer.

In the opinion of a majority of the court judgment is to be entered in favor of the defendant John Olejnik.

*So ordered.*