BREYER, Circuit Judge.
 

 This appeal is part of a lengthy controversy between Edward Rolfe, the President of Micro Hydraulic Valves, Inc., and a former employee, Walter Mielko, who had formed a company called Micro Hydraulics Valve Co., Inc. (Because of the confusing similarity of the names, we shall refer to Rolfe’s company as “Rinc” and to Mielko’s company as “Mico”). In 1976 Rinc bought the assets of Mico and, as part of the sale price, gave Mico a $70,000 promissory note secured by Rinc assets and a second mortgage on a home owned by Rolfe and his wife. To make a long story short, Rinc failed and filed a chapter 7 bankruptcy petition; its assets were insufficient to pay the Note; and the Rolfes have filed a chapter 13 petition in which they seek to avoid the consequences of pledging their home as collateral. Their arguments are highly technical, and amount to attacks on the validity of the various legal papers drawn in 1976 — some of which the record suggests (but does not clearly indicate) were drawn by the Rolfes’ own lawyers. The bankruptcy court, 25 B.R. 89 (Bkrtcy.1982) rejected the Rolfes’ technical arguments. And, so do we.
 

 There are three basic relevant documents: (1) the Purchase Agreement between Rinc and Mico; (2) the $70,000 Note that Rinc executed in favor of Mico; and (3) the Mortgage that the Rolfes executed in favor of Mico. The Purchase Agreement refers specifically to the other two documents and says that it includes their actual text. The Agreement states that when Rinc receives various relevant papers from Mico, Rinc will then mail to Mico the following documents:
 

 A. Promissory Note in the sum of Seventy Thousand ($70,000) Dollars, a copy of which is appended hereto and marked Exhibit A [Exhibit A is the Note here at issue],.. .
 

 C. A Second Mortgage executed and suitable for recording on the house owned by EDWARD ROLFE and STEPHANIE ROLFE, as tenants by the entirety, located on Silver Birch Lane, Lincoln, Massachusetts, á copy of which is appended hereto and marked Exhibit B [Exhibit B is the Mortgage here at issue].
 

 The Note, signed by Rolfe as President of Rinc states that for “value received” Rinc promises to pay Mico:
 

 the sum of SEVENTY THOUSAND DOLLARS ($70,000) with interest on the unpaid balance at the rate of ten (10%) percent per annum, for a period of five (5) years .... Payment of principal together with interest on the unpaid balance shall be made on the seventeenth day of May, 1976 and monthly thereafter on the seventeenth day of each month in equal installments of $1526.89 until the principal of said Note has been paid in full....
 

 This Note is secured by: ... (2) a second mortgage on a certain parcel of real estate in Lincoln, Massachusetts, a copy of which is appended hereto.
 

 The Mortgage, signed by both Rolfes personally, states in relevant part that:
 

 Edward Rolfe and Stephanie Rolfe ... for consideration paid, grant [this Mortgage to Mico] ... to secure the payment of Seventy Thousand ($70,000) Dollars in five (5) years with ten (10%) per cent interest per annum, payable as provided in one note of even date....
 

 The Rolfes here claim that these documents are inadequate in four respects. First, they claim they received no consideration for the Mortgage, because Mico “loaned” the $70,000 (i.e., agreed to defer the payment of the purchase price of the Mico assets) to Rinc rather than the Rolfes. This is not a serious argument, however, for
 
 *3
 
 the consideration that promisor A receives when C lends money to B is the loan to B, not some
 
 additional
 
 benefit to A. In other words, the Rolfes wanted Mico to take
 
 deferred
 
 payment from Rinc and by putting up security, they got what they bargained for.
 
 See, e.g., Marine Contractors Co. v. Hurley,
 
 365 Mass. 280, 810 N.E.2d 915, 919 (1974);
 
 Palmer Savings Bank v. Insurance Co. of North America,
 
 166 Mass. 189, 196, 44 N.E. 211, 213 (1896);
 
 Restatement (Second) of Contracts,
 
 § 71(4) & comment e.
 

 Second, the Rolfes argue that the Statute of Frauds prevents enforcement of their mortgage because not all of its essential terms are in writing. Mass.Gen.Laws Ann. ch. 259, § 1. We assume for the sake of argument that we deal with “a special promise to answer for the debt” of another.
 
 But cf., e.g., Restatement (Second) of Contracts
 
 § 116 (Statute of Frauds inapplicable when “the consideration for the promise is in fact or apparently desired by the promis- or mainly for his own economic advantage”). Yet, even on that assumption, the writings are adequate. As the
 
 Restatement
 
 makes clear, for Statute of Frauds purposes a written memorandum “may consist of several writings” as long as they “clearly indicate that they relate to the same transaction.”
 
 Id.
 
 at § 132; see,
 
 e.g., Clark v. Olejnik,
 
 240 Mass. 215, 217, 133 N.E. 197 (1921);
 
 Freeland v. Ritz,
 
 154 Mass. 257, 259, 28 N.E. 226 (1891);
 
 Salmon Falls Manufacturing Co. v. Goddard,
 
 55 U.S. (14 How.) 446, 454, 14 L.Ed. 493 (1852);
 
 Restatement (Second) of Contracts
 
 § 132 comment a (“[explicit incorporation by reference is unnecessary,” so long as evidence of connection between writings is “clear and convincing”). Here the Agreement explicitly refers to the specific Note and Mortgage at issue; the Note makes clear that a home mortgage is held as security for payment; and the Mortgage states that Rolfe’s house secures a $70,000 note. Moreover, the Rolfes signed the Mortgage. For Statute of Frauds purposes, only one of several writings need be signed if “the writings in the circumstances clearly indicate that they relate to the same transaction.”
 
 Restatement (Second) of Contracts
 
 § 132. Appellants point out that the Note is undated and the Mortgage refers to a “note of even date.” But in the context of this record that fact creates no ambiguity or uncertainty and will result in no injustice when the mortgage is enforced.
 
 Restatement (Second) of Contracts
 
 § 131. The Statute of Frauds is not the tax code.
 
 See 2
 
 A. Corbin,
 
 Corbin on Contracts
 
 § 498 (1950) (“we should always be satisfied with ‘some note or memorandum’ that is adequate, when considered with the admitted facts, the surrounding circumstances, and all explanatory and corroborative and rebutting evidence, to convince the court that there is no serious possibility of consummating a fraud by enforcement”).
 

 Third, appellants claim that the transaction violates Mass.Gen.Laws Ann. ch. 140, § 90B:
 

 If any note secured by such a mortgage and any such mortgage does not, among its provisions, specify as separate items the principal sum, the rate of interest or its equivalent in money, the period of the loan and the periodic due dates, if any, of principal and interest, the lender shall have no right to collect interest.
 

 Appellants concede that the Mortgage states (1) “the principal sum,” (2) “the rate of interest or its equivalent in money,” and (3) “the period of the loan.” They argue that it does not state the “periodic due dates ... of principal and interest,” because, instead of explicitly setting those items forth, the Mortgage provides that the principal and interest are “payable as provided in one note of even date.” In our view, given the commercial context, the fact that both parties were represented by counsel, and the fact that one document— the Agreement — contains the text of both the Note and the Mortgage, this language is sufficient. As far as the record indicates, by referring to the provisions in the Note, the Mortgage referred as adequately to the relevant terms as if they had been spelled out on an appended page of the Mortgage. Although § 90B may be strictly construed, the Supreme Judicial Court suggests that
 
 *4
 
 the section will not be interpreted in an overly technical fashion where doing so would work a gross injustice.
 
 Cf. Remy v. Sher,
 
 346 Mass. 471, 194 N.E.2d 106 (1963) (five year note that lists total interest as $2,356.80 adequately states “rate of interest or its equivalent in money”).
 

 Fourth, appellants seek attorney’s fees for a claimed violation of Mass.Gen. Laws Ann. ch. 140, §§ 90A & 90D. Section 90A limits the interest that may be charged on a loan secured by a second mortgage on a home. If it is interpreted as Dean Huber of the Boston College Law School suggests, there may have been no significant violation, for he argues that under § 90A:
 

 Maximum interest rates are limited to
 
 IV2
 
 per cent per month on the unpaid balance of the loan; further interest limited to 1 per cent per month can be charged when default occurs.
 

 Huber,
 
 Security and Mortgages,
 
 7 Ann.Survey Mass.L. 88, 94 (1960). On the other hand, appellants in this suit would interpret the statute differently and they have made a host of complicated arguments in support. The answers to those arguments are not obvious; indeed, Professor Scott has cited this statute as an example of:
 

 a structure of categories, exceptions, and rates and methods of computation that surpasses (or at least does not repay the effort required for) understanding... .
 

 Scott,
 
 The Patchwork Quilt: State and Federal Roles in Bank Regulation,
 
 32 Stan.L. Rev. 687, 713 & n. 162 (1980).
 

 We need not decide the substantive question raised, however, for the statute, as far as relevant here, provides only two remedies: (1) reformation of the interest to 18 per cent per year; and (2) attorney’s fees. Mass.Gen.Laws Ann. ch. 140, § 90D. The district court reformed or interpreted the documents to eliminate the possibility of an “overcharge,” and appellees do not now seek to collect any interest in excess of § 90A limits. Further, given the inconsequential role that any alleged § 90A “overcharge” has played in this lawsuit, we suspect that the only “reasonable” § 90D attorney’s fee in this case would be none. For these reasons, we believe it fair to hold appellants strictly to our rule of “waiver.” Although they sought attorney’s fees under a different statute, they did not seek attorney’s fees
 
 under § 90D
 
 from the court below. And the relevant circumstances and arguments under the different statutes are quite different. Had they sought § 90D attorney’s fees below, the bankruptcy judge would have focused more precisely on whether § 90A had been violated, and if he had found a violation, he would have decided what fee would be reasonable. To prolong these proceedings further in order to allow such consideration now would be unfair to appellees. In these circumstances, we shall not consider appellants’ § 90D contention, raised for the first time on this appeal.
 
 Johnston v. Holiday Inns, Inc.,
 
 595 F.2d 890, 894 (1st Cir.1979).
 

 Affirmed.