**In re KENNEBAGO CORPORATION, Debtor.**

**KENNEBAGO CORPORATION, Plaintiff,**

v.

**Thomas BLACKBURN, Michael R. Baird, Defendants.**

Bankruptcy No. 283-00215.

Adv. No. 284-0018.

United States Bankruptcy Court, D. Maine.

June 6, 1985.

**154**

Edgar S. Catlin, III, Hiscock & Barclay, Portland, Me., for plaintiff.

Robert S. Hark, Isaacson, Hark & Epstein, Lewiston, Me., for defendants.

## MEMORANDUM DECISION

FREDERICK A. JOHNSON, Bankruptcy Judge.

In this consolidated proceeding the debtor-in-possession (Kennebago) and the official creditors' committee object to the secured claim of Robert K. Blackburn[1] and Michael R. Baird and seek to recover $125,-000 allegedly paid by Kennebago to Baird and Blackburn. The court concludes that Baird and Blackburn's claims must be disallowed, but that Kennebago may not recover the $125,000 paid.

The essential facts are not in serious dispute and are established by several days of trial and numerous exhibits introduced at that trial.

In the early spring of 1978 Baird, who was formerly employed by Central Maine Power Company (CMP), learned that CMP was interested in disposing of an inactive dam site situated on the Kennebago River. Baird discussed the prospect with Thomas E. Blackburn, an attorney. Blackburn expressed an interest in the project whereupon Baird and Blackburn submitted a bid of $5,300.00 which was eventually accepted by CMP.

Title to the dam site was taken by Mechanic Falls Investment Company, an enterprise owned by Baird and his wife. The property was later conveyed to Kennebago Corporation, of which Baird and Blackburn were sole stockholders, each holding twenty-five shares. Kennebago was organized by Baird and Blackburn to take title to the dam site, resurrect it, and develop electricity by water power for sale to CMP. Unfortunately, the enterprise was unable to obtain the necessary funds estimated at $350,000 for the resurrection.

Finally, on November 12, 1980, Baird and Blackburn executed an agreement with Maine Water Power Development (MWPD) whereby MWPD was to purchase "ninety (90%) percent of the capital stock of Kenne-

---

1. Robert K. Blackburn claims by assignment from Thomas E. Blackburn.

bago Corporation from Michael R. Baird and Thomas E. Blackburn ('sellers')." The purchase price totalled $375,000, with payment to be made as follows:

(a) $60,000 payable at closing;

(b) $40,000 payable on January 2, 1981;

(c) $25,000 payable on June 1, 1981 or when Seller's mortgage interest is subordinated to that of an institutional lender or when electric power is first produced by the site, whichever occurrence happens first;

(d) $25,000 payable when Seller's mortgage interest is subordinated to that of an institutional lender or when electric power is first produced by the site, whichever occurrence happens first.

The balance, $225,000, was to be paid in annual installments computed on the project's gross income or $10,000, whichever is greater. In any event, MWPD guaranteed that $100,000 was to be paid at the end of five years and the total balance paid at the end of ten years.

The agreement provided that Kennebago "will deliver sellers a mortgage of its assets, securing the $225,000 payment...."

On November 24, 1980, Baird and Blackburn, as sole stockholders of the debtor, held a corporate meeting at which they voted to increase the authorized capital stock of the debtor from one hundred to one thousand shares, no par common, and voted to issue twenty-five additional shares to each of themselves. On the same date certificates were issued for the additional twenty-five shares, and a certificate was prepared for nine hundred shares in favor of Maine Water Power Development. The purpose of this activity was to put MWPD in the position of a ninety percent shareholder in accordance with the purchase and sale agreement of November 12, 1980.

On December 5, 1980, the closing of the "Purchase and Sale of Capital Stock of Kennebago Corporation" was held. The closing agreement reaffirmed and incorporated the Purchase and Sale Agreement and was signed by Thomas E. Blackburn and Michael R. Baird as "individuals and as sole shareholders, officers and directors" of the debtor. It was also signed by Philip L. Merrill as president of MWPD.

The $60,000 provided for in the Purchase and Sale Agreement was paid by MWPD to Baird and Blackburn at the closing [2], and the certificate representing nine hundred shares of the debtor's stock was delivered to MWPD. A "Directors and Shareholders" meeting was held at which Baird and Blackburn resigned as officers, and new officers and directors were elected. Thomas L. Sturdevant was elected President and Treasurer, and F. Woodman Jones was elected Clerk. Sturdevant, Philip L. Merrill, Bradford H. Hilton, Baird and Blackburn were elected "as additional directors." Merrill was, at the time, President of MWPD. Sturdevant was an employee of Schooner Capital Corporation, which was financing MWPD.

As part of the closing, a promissory note for $315,000 was executed by the debtor, Kennebago, in favor of Baird and Blackburn. The note was guaranteed by MWPD and was signed by Thomas L. Sturdevant as President of Kennebago and Philip L. Merrill, as President of MWPD. This note represents the balance due Baird and Blackburn for the sale of ninety percent of their interest in the debtor. The note was secured by a mortgage on the debtor's hydro site. The mortgage was signed by Thomas L. Sturdevant, newly elected President of the debtor. The note and mortgage are here under attack by the debtor and creditors' committee.

On January 2, 1981, in accordance with the Purchase and Sale Agreement, $40,000 was paid to Baird and Blackburn by certified check. This sum was paid by MWPD and delivered to Baird and Blackburn by Philip Merrill, president of MWPD. At this time the debtor, Kennebago, did not have a checking account or any other form of

2. Actually, a cashier's check for $50,000 was delivered at that time. A check for $10,000 was delivered previously as an "Escrow Deposit."

bank account. On June 1, 1981, an additional $25,000 was paid to Baird and Blackburn in accordance with the Purchase and Sale Agreement. This money was allegedly borrowed by Kennebago from Schooner Capital Corporation of Boston, Massachusetts. Schoner, who is now the owner of MWPD's ninety percent interest in the debtor, was the source of financing for MWPD.

After the closing on December 5, 1980, Baird and Blackburn had very little to do with the corporation although they were elected directors at a meeting held in conjunction with the closing on that date.

Shortly after the closing, engineering and construction work commenced on the hydro site to rehabilitate it for the generation of electric power. Construction work continued until sometime during September of 1981, at which time Schooner Capital ceased to finance the operation.

On August 17, 1983, an involuntary chapter 7 petition was filed in this court. Baird and Blackburn were two of the petitioning creditors. The case was converted to chapter 11 on September 29, 1983, and an order for relief was entered on October 4, 1983. The debtor's schedules, of which the court takes judicial notice, lists mechanics' liens and attachments in excess of $260,000 and unsecured claims exceeding $500,000. Baird and Blackburn are listed as secured creditors and each has filed a proof of claim for $125,000, claiming to be secured by virtue of the debtor's mortgage dated December 5, 1980.

 The debtor, exercising the powers of a trustee, and the creditors' committee seek to avoid the note and mortgage and recover, for the estate, the sums, totalling $125,000, paid to Baird and Blackburn. *See* 11 U.S.C. §§ 544(a), 551 and 1107. The debtor and the creditors' committee argue that there was no valid consideration to support the note and mortgage deed upon which Baird and Blackburn base their claim. The court agrees with this contention. A mortgage must be supported by adequate consideration to be valid. When the obligation secured by the mortgage is fictitious, the mortgage is a nullity and cannot be enforced. 7 Fletcher, *Cyclopodia of Corporations*, § 3123 (1978).

> It is essential to the validity of a mortgage and the right of a mortgagee to enforce it that it should be supported by a valid consideration....

*Tyler v. Wright*, 122 Me. 558, 119 A. 583 (1923).

 To constitute consideration, a performance or a return promise must be bargained for. *In re Rolfe*, 710 F.2d 1 (1st Cir.1983). In *Rolfe* the First Circuit found that there was consideration for a mortgage on the personal residence of Rolfe, which was given as security for an obligation of a corporation of which Rolfe was President. The court found that Rolfe got what he bargained for, a deferred payment by his corporation for the purchase of assets. The court cited Restatement of Contracts (Second) § 71(4) and Comment e. The instant proceeding, unlike *Rolfe*, presents a scenario where Baird and Blackburn and MWPD bargain for the benefit of themselves to the detriment of the third-party, Kennebago.

 Close scrutiny of the transaction that occurred on December 5, 1980, reveal that the activity on that date was in furtherance of a sale of stock by Baird and Blackburn to MWPD. The negotiations and bargaining that preceded the sale were between these entities. The corporate debtor was not involved in this bargaining process. Baird and Blackburn were concerned with the sale of their stock, representing ninety percent of the interest in the corporation. MWPD was concerned with purchasing the controlling interest in the corporate debtor. The evidence reveals that Baird and Blackburn were very concerned with securing payment of the balance due from MWPD for the sale of the stock. It was for this reason that the fictitious note and mortgage were concocted. Through three days of trial Baird and Blackburn attempted to demonstrate why Kennebago, which was not a party to the purchase and sale, should agree to pay for

MWPD's purchase of their stock and encumber its only substantial asset to secure payment of MWPD's obligation. This they have failed to do to the court's satisfaction. The obligation to pay was clearly that of MWPD, and the primary obligor under the promissory note should have been MWPD. MWPD signed only as guarantor of the note and advanced no security.

It is significant that all parties to the execution of the note and mortgage were "insiders" as defined by 11 U.S.C. § 101–(28). Merrill was the President of MWPD, and Sturdevant was an employee of Schooner Capital Corporation, which was financing MWPD.

Baird and Blackburn rely upon *In re Reliable Mfg. Corp.*, 703 F.2d 996 (7th Cir. 1983). That case is distinguishable. The seventh circuit found that there was consideration for the corporate debtor's *guarantee* (emphasis supplied). The Delaware statute governing corporations specifically grants corporations the power to make contracts of guarantee and suretyship.[3] Furthermore, as the court said: "Last and most important, no other creditors are before us."

Baird and Blackburn also rely upon an eighth circuit case, *In re Terminal Moving and Storage Co.*, 631 F.2d 547 (8th Cir. 1980). That case is also distinguishable. Again, the officers and directors did not cause the debtor to become the primary obligor, as is the case here, to the detriment of other creditors.

In summary, the court concludes that the transaction of December 5, 1980 was a sale of ninety percent of their shares in the debtor by Baird and Blackburn to MWPD. The obligation to pay for those shares is MWPD's and not the debtor's. The promissory note which was signed by the newly elected president of the debtor, an employee of Schooner, created a fictitious debt in the debtor. The note and mortgage are void.

The conduct of the parties at and subsequent to the closing reinforces the court's conclusion. The payments of $60,000 at the closing as well as the $40,000 on January 1, 1981 were made by MWPD directly to Baird and Blackburn. The $25,000 payment of June 1, 1981, was made by Schooner Capital through the debtor. The debtor was a mere conduit through which payment was made.

 It should be observed that even if the transaction were not fictitious, illegal and void, Baird and Blackburn's claim would be subject to subordination under 11 U.S.C. § 510(b) or (c). *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939), *Reiner v. Washington Plate Glass Co. (In re Washington Plate Glass Co.)*, 27 B.R. 550, 8 C.B.C.2d 707 (D.D.C.1982).

Having concluded that the transaction of December 5, 1980 was a sale of stock by Baird and Blackburn to MWPD and that the payments totalling $125,000 were made by MWPD and/or Schooner Capital and not by the debtor, it follows that the Debtor and Creditors' Committee may not recover the payments from Baird and Blackburn.

An appropriate order will be entered.

---

**3.** The Maine statute is similar. 13–A MRSA 202

