### FRANK PAUL *vs.* GEORGE B. WILBUR.

Suffolk. January 27, 1905. — September 8, 1905.

Present: KNOWLTON, C. J., MORTON, LORING, & BRALEY, JJ.

*Practice, Civil. Contract,* Implied: common counts. *Attorney at Law. Frauds, Statute of.*

In an action of contract where the plaintiff has introduced an auditor's report including his own testimony and rested, and the defendant then has called the plaintiff for cross-examination and the plaintiff in rebuttal has read the testimony of the defendant before the auditor, a request of the defendant for a ruling that upon the facts and evidence stated by the auditor the plaintiff is not entitled to recover, should be refused, as it is immaterial whether the facts found by the auditor make out a case apart from the additional facts put in evidence.

If an attorney at law has prepared papers for a client to use in the acquisition of a certain property, and his client informs him that he has sold the enterprise to another, and if at the request of the purchaser the attorney delivers the papers to him, the attorney, if he has not been paid for his work, has a right to assume, in the absence of information of any arrangement to the contrary, that he is to be paid for his services in preparing the papers by the purchaser of the enterprise who requests their delivery, and in an action against the purchaser can recover a reasonable compensation for such services. If in such action it appears that by an arrangement not known to the plaintiff the defendant in making the purchase was acting for the benefit of the plaintiff's original client and that client was to furnish the papers to the defendant, this does not affect the plaintiff's rights.

The provision of R. L. c. 74, § 1, cl. 2, in regard to a special promise to answer for the debt of another, does not apply to a case where the promisor receives something for his own benefit from the promisee.

THE following statement of the case is taken from the opinion of the court:

This is an action to recover the reasonable value of certain legal services which resulted in the drawing of papers necessary for the organization of a railroad corporation under the laws of Ohio, the issue of its capital stock, and of its bonds secured by a mortgage on its property.

The case went to an auditor who, in a report and supplemental report, found in favor of the plaintiff in the sum of $2,000. At the trial before a single justice of this court the plaintiff offered in evidence the report and supplemental report of the auditor, including an agreement there referred to, and rested. The defendant then called the plaintiff for cross-examination. The plaintiff in rebuttal read the testimony of the defendant before the auditor. The defendant asked for a ruling that on the evidence the plaintiff was not entitled to recover, and that upon the facts and evidence stated by the auditor the plaintiff was not entitled to recover. These were refused. The case was left to a jury under instructions not objected to, and a verdict was returned for the plaintiff. The case is here on exceptions to the refusal to give these two rulings.

The facts disclosed in the auditor's report and at the trial were in substance as follows.

One Dickinson, in December, 1901, bought a railroad property in Ohio at a receiver's sale, paying down a part only of the purchase price. The balance of the purchase money finally became due on Monday, July 21, 1902, and on a failure to make this final payment Dickinson's interest in the railroad and in the payment already made was to be forfeited and lost. During the intervening seven months, the plaintiff, a member of the bar, had at Dickinson's request prepared the papers for which he now seeks to recover from the defendant.

On the Saturday next preceding the Monday when the final payment had to be made, Dickinson had not succeeded in raising the money necessary to complete the purchase. On that Saturday he succeeded in interesting the defendant in the matter. It was agreed between Dickinson and the defendant that the defendant should advance the money necessary to complete the purchase and take title in his own name, it being agreed that if Dickinson afterwards should repay to the defendant all advances made to complete the purchase, and in addition $5,000 previ-

ously lent by the defendant to Dickinson, plus any loss which the defendant should suffer by reason of certain bonds which he had bought of or through Dickinson, he, Dickinson, should have the railroad property, or the profits, if it had been sold at a profit over and above all these sums. In this connection Dickinson agreed to furnish the defendant with the papers which had been drawn by the plaintiff as his attorney. It was also arranged that the defendant's counsel, Mr. Cushing, should go to Ohio that afternoon to complete the purchase on the following Monday. Later on this same Saturday, Cushing, Dickinson and the plaintiff had a conference at the plaintiff's office. At this time the plaintiff gave Cushing the papers and explained to him the condition of the enterprise and the steps to be taken in Ohio. The plaintiff at this time also drew an assignment to the defendant of Dickinson's interest in the purchase, to be signed by a third person to whom Dickinson had assigned it.

The auditor found as a fact that the plaintiff never was told of the fact that the defendant was taking over the property for the ultimate benefit of Dickinson, nor of the fact that Dickinson had agreed to furnish these papers to the defendant. The auditor further found "that nothing was said at the time the papers were turned over as to whether Mr. Paul was to receive compensation or whether he was turning them over without expectation of compensation, but I find, if the same is material and admissible, that the plaintiff turned over those papers to Mr. Cushing as the defendant's attorney in the expectation of receiving a reasonable compensation from the parties who should use them, but that Mr. Cushing, the defendant's attorney, received the papers without any notice (except such, if any, as was necessarily to be implied from the circumstances) that his principal would be called upon to pay for them." Cushing took the papers with him to Ohio, and made use of them in organizing the new corporation and in drawing the mortgage deed. The auditor concluded his report with this finding: "The fair value of the papers prepared by the plaintiff, considered as completed instrumentalities designed and adapted for certain uses, to which uses they were put by the defendant, was two thousand dollars."

In addition to the facts stated in the auditor's reports, the defendant relies in defence of the claim on certain facts drawn

out by him on the cross-examination of the plaintiff. In September, 1902, two months after the papers in question were delivered to the defendant, the plaintiff made out a bill for his services to the Columbus and Southern Railway Company (the name of the corporation organized by the defendant), which included all the services he rendered in the railroad matter, some of which did not result in drawing the papers in question. This bill was sent to Dickinson, stating that Mr. Wilbur was the party to whom the bill should be sent, and asking Dickinson to forward it to him. The defendant further drew out from the plaintiff a letter written to Cushing on July 30, 1902, asking him to let the plaintiff complete his duplicate set of papers so as to make them conform to the papers in their final state. In this letter he wrote that he deemed this essential for divers reasons. On the stand his explanation was that he had an expectation of being called upon to act in the matter later, although he knew of Mr. Cushing's employment.

*H. E. Warner*, for the defendant.

*F. T. Benner*, for the plaintiff.

LORING, J. [After the foregoing statement of the case.] We are of opinion that the exceptions must be overruled. It was of no consequence whether the plaintiff made out a case on the facts found by the auditor apart from the additional facts put in evidence at the trial. That exception must be overruled for that reason.

There is no question of the law on which the plaintiff's right of recovery depends. The rule is stated with great accuracy by Morton, J. in *Pew* v. *Gloucester National Bank*, 130 Mass. 391. He there says, at p. 395: "To render such party liable as a debtor under an implied promise, it must be shown, not only that the services were valuable, but also that they were rendered under such circumstances as to raise the fair presumption that the parties intended and understood that they were to be paid for; or, at least, that the circumstances were such that a reasonable man in the same situation with the person who receives and is benefited by them would and ought to understand that compensation was to be paid for them." See also *Sawyer* v. *Pawners' Bank*, 6 Allen, 207; *Newmarket Manuf. Co.* v. *Coon*, 150 Mass. 566; *Bartlett* v. *Mystic River Co.* 151 Mass. 433;

and see in this connection, *Higgins* v. *Shepard*, 182 Mass. 364, 367.

We do not agree with the defendant's contention that under this rule the plaintiff as matter of law has not made out a case. The question of what ought to have been understood is to be determined on what was known to the person who was parting with his property. Facts known to the defendant who took the property not known to the plaintiff who parted with his property and not communicated by the defendant to the plaintiff cannot be taken into consideration. In the case at bar we assume that the plaintiff had done the work which produced the papers in question, at the request of Dickinson, and that Dickinson then owed him for them. But when the plaintiff was told that Dickinson had sold the railroad enterprise to the defendant and when he was asked to furnish this purchaser with the papers which he had prepared to carry it into effect, it would be assumed by the plaintiff, who had not been paid, that his bill for these papers would be paid by the person who had taken over the enterprise and was to make use of his papers, at least in the absence of information that there was a special arrangement.

We find nothing inconsistent with this position in the fact that by accident other charges (since withdrawn) were included in the bill sent to Dickinson to be forwarded to the defendant, nor in the letter accompanying that bill.

There is nothing in the defendant's contention that the promise sued on is a special promise to answer for the debt of another within R. L. c. 74, § 1, cl. 2, unless Dickinson was discharged. That section does not apply where the promisor receives something from the promisee for his own benefit. The point is settled by a number of authorities beginning with *Alger* v. *Scoville*, 1 Gray, 391, and ending with *Stratton* v. *Hill*, 134 Mass. 27, and is recognized in the two cases cited by the defendant (in which it did not apply), *Furbish* v. *Goodnow*, 98 Mass. 296, at pp. 297, 298; *Curtis* v. *Brown*, 5 Cush. 488, 491; and in the recent case of *Griffin* v. *Cunningham*, 183 Mass. 505, 507. In the case at bar the defendant got from the plaintiff the papers which he wanted to use and did use in carrying out the enterprise in question, in which he had an interest, although under some circumstances not the whole and only interest.

*Exceptions overruled.*