P. BERRY AND SONS, INCORPORATED, *vs.* CENTRAL TRUST COMPANY & another, executors.

Middlesex.   November 19, 1923. — January 3, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Frauds, Statute of.   Contract,* Consideration.

In the declaration in an action of contract against the executor of the will of one who had been a large creditor and a stockholder in a certain corporation, the plaintiff alleged that the defendant's testator had promised to pay a certain sum of money to him for his forbearance of suit against the corporation as a creditor and for an assignment of his stock to a syndicate. At the trial there was evidence tending to show the following facts: The plaintiff was a creditor of and the largest holder of second preferred stock in a corporation which, when it was in financial difficulties, turned over the management of its business for six months to a committee under an agreement which gave them full power to terminate the agreement and wind up the affairs of the company for the benefit of its creditors. At the expiration of the six months, the committee offered the plaintiff ten per cent in settlement of his claim as creditor. The funds for the payment of this sum were to be furnished by a syndicate, of whom the defendant's testator was one, who were acting under an agreement by which they proposed, without releasing their own claims against the corporation but

taking notes for their contributions to a reorganization fund, to take full control of the corporation's affairs and to reorganize it under a different name. The plaintiff refused to accept the committee's offer. It being discovered that the plaintiff's vote as a stockholder was necessary to carry out the scheme, the defendant's testator agreed personally to pay the plaintiff a certain sum of money if the plaintiff would not bring an action against the corporation, would not prevent the transfer going through and would deliver his stock to the syndicate's attorney. The plaintiff thereupon brought no action and sent the stock and a proxy to the attorney for the syndicate, who voted the stock at an adjourned meeting of the corporation and the reorganization was consummated. *Held,* that

(1) A finding was warranted that a contract was made between the plaintiff and the defendant's testator and that the plaintiff, in consideration of the promise of the defendant's testator to pay the sum of money, sold and transferred all his stock in the corporation to the defendant's testator;

(2) Such contract was founded upon a valid consideration proceeding from the defendant's testator personally and was not a special promise to answer for the debt of another within G. L. c. 259, § 1, cl. 2.

CONTRACT upon an alleged express agreement by the defendants' testator to pay the sum of $750 to the plaintiff. upon its refraining from taking legal action against the Mills Tea and Butter Corporation and its assigning to a syndicate shares of second preferred stock of that corporation which it owned. Writ dated September 11, 1922.

In the Superior Court, the action was tried before *Walsh,* J. Material evidence is described in the opinion. At the close of the evidence, the defendants moved that a verdict be ordered in their favor and also asked for the following rulings:

"1. On all the evidence the plaintiff is not entitled to recover.

" 2. There is no evidence of consideration for the alleged promise of defendants' testator, if such was ever made, and plaintiff is not entitled to recover.

" 3. That if the plaintiff, like all other creditors, accepted ten per cent as the composition offer of the Mills Tea and Butter Corporation, it would be a fraud upon the creditors to have plaintiff paid any additional and separate amount of $750."

The motion was denied and the rulings were refused. The jury found for the plaintiff in the sum of $805.25. The defendants alleged exceptions.

*J. H. Hurley,* for the defendants.
*E. A. Whitman,* for the plaintiff.

CROSBY, J.  The plaintiff was a creditor and the largest holder of second preferred stock in the Mills Tea and Butter Corporation.  The defendants' testator was also a large creditor and a stockholder in the corporation.

In December, 1920, the corporation, being in financial difficulties, the owner of all its common stock turned over that stock and the management of its business for the term of six months to a committee, in accordance with the terms of a written agreement, under which the committee had full power to terminate the agreement or to wind up the affairs of the company for the benefit of its creditors.

At the end of the six months, as the business was still unsuccessful, a syndicate, of which the defendants' testator was a member, was formed to provide the committee with funds to pay the creditors ten cents on a dollar.  The syndicate furnished the money and took over the common stock therefor, and as the plaintiff and four other creditors refused to accept the ten per cent, the committee, purporting to act under the agreement above referred to, " proceeded to sign in behalf of all the creditors, including the plaintiff, a discharge of their claims."  The syndicate then tendered to the plaintiff ten per cent of its claim, which was refused.  The plaintiff then proposed to the attorney for the syndicate that some of the Boston creditors buy its stock.  The attorney stated he would see what could be done and the plaintiff's president said he would mail the stock to the attorney; and this was done the following day.

Thereafter a meeting of the stockholders was held for the purpose of confirming an agreement previously entered into by the syndicate to sell all its assets to a new corporation, known as the Country Club Stores.  It was found that the two thirds vote of all classes of stock necessary in order to pass the vote could not be obtained, unless the plaintiff's stock was acquired.  After the meeting the defendants' testator had an interview with one Ahern, the secretary and general manager of the plaintiff company, and urged him to accept the ten per cent and let the stock of his company be voted and the sale consummated.  Ahern testified that at this meeting, the defendants' testator agreed to pay the

plaintiff $750 and said " we agreed to turn the stock over; we agreed not to attach the stores and to deliver this stock to anybody that this syndicate wanted it delivered to, in other words, we would get out bag and baggage."

James P. Berry, the plaintiff's president, testified that he had a telephone conversation with the defendants' testator, Thayer, in which the above conversation with Ahern was referred to; that Thayer said to him in substance that if he (Berry) would not bring an action against the company and would not prevent the sale going through, and would authorize the attorney of the syndicate (who held the stock) to vote it, that he would personally pay the $750. This proposition Berry testified he accepted. It also appeared that the tender was deposited in the bank by the plaintiff; that a proxy was sent by the plaintiff to the attorney, who voted the stock at an adjourned meeting; and that the sale was authorized and consummated.

Upon the foregoing evidence it could have been found that the contract between the plaintiff and Thayer was that the plaintiff, in consideration of the promise by Thayer to pay $750, sold and transferred all its rights in the Mills company to Thayer. If such was found to be the understanding between the parties, it was founded upon a valid consideration, *Abbott* v. *Doane,* 163 Mass. 433, *Swartzman* v. *Babcock,* 218 Mass. 334, and was not a special promise to answer for the debt of another within the statute of frauds. G. L. c. 259, § 1, cl. 2.

In the case at bar when the syndicate advanced the money to pay the ten per cent, its members, including Thayer, did not release their claims against the corporation, but they were expressly reserved by the terms of the agreement, so that the members took control of the company practically free from all indebtedness but their own. Thayer took the note of the company for his contribution to the sum raised to pay the ten per cent. He was therefore personally pecuniarily interested in obtaining a settlement of the plaintiff's claim against the company. Upon the evidence it could have been found that the contract was independent of the statute. The section of the statute of frauds relied

on by the defendant does not apply where the promisor receives something from the promisee for his own benefit. *Alger* v. *Scoville*, 1 Gray, 391. *Griffin* v. *Cunningham*, 183 Mass. 505, 509. *Paul* v. *Wilbur*, 189 Mass. 48, 52. *Manning* v. *Anthony*, 208 Mass. 399.

The case of *Carleton* v. *Floyd, Rounds & Co.* 192 Mass. 204, which held that an oral promise by a stockholder in a corporation, who was about to acquire the business of the corporation, to pay the debt of a creditor of the company if he would refrain from attaching its property and putting in a keeper, was a special promise to answer for the debt of another within the statute, has no application to the case at bar upon the facts as they could have been found by the jury.

The third request for a ruling that, if the plaintiff accepted ten per cent of its claim, it would be a fraud upon the creditors for it to be paid any additional amount, has not been argued and may be treated as waived; we may say however that it was rightly denied.

The defendants' motion for a directed verdict and their requests for rulings were rightly denied. The exception to the admission of exhibit 1 is not argued and is treated as waived.

*Exceptions overruled.*