WILLIAM KALKER vs. DAVID BAILEN.

Suffolk.    January 8, 1935. — March 25, 1935.

Present: RUGG, C.J., FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Frauds, Statute of. Contract*, What constitutes. *Evidence*, Presumptions
    and burden of proof. *Agency*, Scope of authority.

Where the defendant, in an action of contract to enforce an oral promise
    by the defendant to pay the plaintiff for certain services, pleaded the
    defence that the defendant's promise was merely one to pay the in-
    debtedness of another and therefore was unenforceable by reason of
    the statute of frauds, G. L. (Ter. Ed.) c. 259, § 1, Second, the burden
    rested upon the plaintiff to prove either a memorandum sufficient to
    satisfy the statute or an original promise by the defendant to which
    the statute did not apply.

Evidence, at the trial of an action for services rendered in procuring an
    extension of a first mortgage upon certain real estate, that the owner
    thereof hired the plaintiff; and that during the progress of the nego-
    tiations the plaintiff interviewed the defendant, who was a second
    mortgagee in possession of the property, and told him that he wanted
    the defendant to sign an "authorization," whereupon the defendant
    replied that he did not wish to sign any papers, that he would pay
    the plaintiff for the services and that the plaintiff should send his bill
    to the owner "in the regular routine way" and the defendant would
    pay it, was at most neutral and no more favorable to the plaintiff
    than to the defendant, and did not warrant a finding that the defend-
    ant's promise to pay the plaintiff was an original promise rather than
    a promise to pay an indebtedness of the owner.

Further evidence, at the trial of the action above described, that after
    the defendant took possession of the property, he left the "manage-
    ment" to the agent of the owner, did not warrant a finding that the
    defendant gave the agent authority to make in his behalf an original
    contract with the plaintiff to procure an extension of the first mortgage;
    such evidence went no further than to show authority in the agent to
    procure tenants, collect rents, make ordinary repairs and to manage
    the property with respect to routine matters.

CONTRACT.    Writ dated May 17, 1933, and afterwards
amended.

The action was tried in the Superior Court before *F. T.
Hammond*, J. Material evidence is stated in the opinion.
The judge ordered a verdict for the defendant.    The plaintiff
alleged exceptions.

*J. C. Johnston*, (*H. H. Rudofsky* with him,) for the plaintiff.
*H. Bergson*, for the defendant.

QUA, J. This is an action of contract to recover a balance alleged to be due to the plaintiff for his services in arranging for an extension of certain mortgages. The defendant has pleaded that if any promise on his part to pay the plaintiff is proved, it was an oral promise to pay the debt of another and was unenforceable by reason of the statute of frauds, G. L. (Ter. Ed.) c. 259, § 1, Second.

The trustees of the "I. & S. Realty Trust," hereinafter called the trust, owned certain lands and buildings on Linnaean Street and on Washington Avenue in Cambridge. Each of the two parcels was subject to a first mortgage held by the New York Life Insurance Company. The defendant held a second mortgage on the same properties and had entered thereon for breach of the conditions thereof, but had not completed a foreclosure. In March, 1932, the trust employed the plaintiff, who was a real estate broker in New York, to procure extensions of the insurance company's first mortgages without any payments on the principal and with a reduction in interest from six per cent to five per cent. There was evidence from which the following facts could have been found: While the negotiations were proceeding and after the plaintiff had endeavored without success to procure from the defendant a written "authorization" through a representative of the trust, the plaintiff had an interview with the defendant at the defendant's house in Dorchester, in which he told the defendant that before the plaintiff would have the insurance company's appraiser look at the properties, he wanted the defendant to sign the "authorization" and to tell the plaintiff who was going to pay for his services. The defendant said, "I will pay you for the services." He also said he did not want his name to appear in any way in any papers that were signed, but that the plaintiff should send his bill to the trust "in the regular routine way" and the defendant would pay it. The defendant said he was collecting the rents and making all disbursements, that he did not "want to sign any papers at all. My word is good enough. . . . Whatever I tell you, I will do." Immediately after this talk the defendant went with the plaintiff to Cambridge to see the representative of the trust,

and they spent a good part of the day together discussing the proposed visit of the insurance company's appraiser and examining the properties. After this the plaintiff continued his efforts with the insurance company, keeping the trust informed from time to time as to what he was doing, until extension agreements were completed between the company and the trust on terms satisfactory to the trust and, as might be found, to the defendant also, but differing from those originally desired in that the interest was not reduced and small principal payments were required on one of the mortgages. On January 4, 1933, the plaintiff sent his bill for services to the trust, and when it was not paid, he went to see representatives of the trust in the endeavor to get his money. After some delay, the plaintiff received two checks aggregating $500, each signed "D. Bailen, Special." The defendant kept the rents from the properties in a special deposit.

On cross-examination the plaintiff testified that he knew the trust owned the properties and did not know that Bailen was mortgagee in possession until August, 1932; that up to September 7 he represented only the trust; that on January 4, 1933, when he sent his bill, he claimed the trust owed him $3,000 and that it was the claim against the trust which he desired the defendant to pay; that at the time of his first interview with the defendant the plaintiff understood the defendant was going to pay the bill for the trust. "Q. No question about that, is there? A. From what I can gather, no. He said he would pay the bill that I would render the I. & S. Realty Trust." On redirect examination he testified that he claimed the defendant owed the bill. In answer to the further question "Whom do you claim [owes the bill]?" he replied, "I. & S. Realty Trust. Mr. Bailen, I. & S. Realty Trust."

The ruling of the trial judge was right. It is a close question whether the admissions made by the plaintiff in cross-examination are not conclusive against him that any promise made by the defendant was a promise to pay the debt of the trust within the statute and not an original undertaking on the defendant's part. But we prefer for the purpose of this

decision to regard the answers of the plaintiff, a layman presumably unfamiliar with one of the most delicate distinctions in the law, as inconclusive and to decide the case on broader grounds. As the statute of frauds was pleaded, the burden rested upon the plaintiff either to prove a memorandum sufficient to satisfy the statute or to prove an original promise by the defendant to which the statute does not apply. *Stone* v. *Walker,* 13 Gray, 613. *Hill* v. *Raymond,* 3 Allen, 540. *Heywood* v. *Stiles,* 124 Mass. 275. *Downs* v. *Perkin,* 207 Mass. 409, 411. *Slotnick* v. *Smith,* 252 Mass. 303, 305. This requirement cannot be met by evidence which is at most no more than neutral, having no greater tendency to favor the plaintiff than the defendant. There was no evidence at all of any memorandum. The employment of a broker ordinarily creates no contract. Neither the trust nor the defendant became liable for a commission until the plaintiff had fully performed his undertaking. *Elliott* v. *Kazajian,* 255 Mass. 459, and cases cited. But in any event the order of time in which the promises were made is not controlling. Williston on Contracts, § 461. The evidence fails to show that the defendant's promise was intended to be substituted for that of the trust. The trust remained liable. It has been said that if any credit is given to both promisors, the case is within the statute. *Swift* v. *Pierce,* 13 Allen, 136. *Bugbee* v. *Kendricken,* 130 Mass. 437. *O'Connell* v. *Mt. Holyoke College,* 174 Mass. 511. *Slotnick* v. *Smith,* 252 Mass. 303. The plaintiff does not now contend that there is any joint liability. He has discontinued against the trust and amended his declaration so as to charge the defendant alone, and he states in his brief that the single question is whether the defendant's obligation was a primary one and not a promise to pay the debt of the trust. It is not contended, and on the evidence could not be contended, that either the plaintiff or the defendant understood that the plaintiff was to be paid twice. It would seem, therefore, that if two promises were in fact made, one promise must have been an original one and the other collateral or secondary (Williston on Contracts, § 466), but we are unable to discover any evidence which fairly can be said to tend to show that the

defendant's promise was the original one and that of the trust collateral rather than the reverse.

In many cases it has been held that a promise is, or may be found to be, an original one because the promisor received from the promisee in exchange for it some new interest in property which he had not previously owned or the discharge of a lien or of some other encumbrance on property in which he was interested. *Nelson* v. *Boynton*, 3 Met. 396. *Curtis* v. *Brown*, 5 Cush. 488. *Ames* v. *Foster*, 106 Mass. 400. *Wills* v. *Brown*, 118 Mass. 137. *Manning* v. *Anthony*, 208 Mass. 399. *Crowley* v. *Whittemore*, 255 Mass. 99. *Kahn* v. *Waldman*, 283 Mass. 391. But in this case both promisors were interested in the same property for which they got precisely the same benefit and protection by the same performance on the part of the plaintiff. The plaintiff gave nothing to either different from that which he gave to the other. The cases of *Paul* v. *Wilbur*, 189 Mass. 48, *P. Berry & Sons, Inc.* v. *Central Trust Co.* 247 Mass. 241, 245, and *Washington & Devonshire Realty Co. Inc.* v. *Freedman*, 263 Mass. 554, cited by the plaintiff, really belong to the same type as those previously cited. The rather broad language used in them is explained in *Colpitts* v. *L. C. Fisher Co.* 289 Mass. 232, where many of the cases are collected and discussed. See also *Furbish* v. *Goodnow*, 98 Mass. 296; *Gill* v. *Herrick*, 111 Mass. 501; *Carleton* v. *Floyd, Rounds & Co.* 192 Mass. 204; *Ribock* v. *Canner*, 218 Mass. 5; *George Lawley & Son Corp.* v. *Buff*, 230 Mass. 21; and *Collins* v. *Abrams*, 276 Mass. 106.

We are further of the opinion that the evidence tending to show that after the defendant entered upon the properties he left the "management" to the agents of the trust, taken in connection with its context, cannot be stretched so far as to support a finding that the defendant gave those agents authority to make in his behalf an original contract to employ a broker to procure extensions of the mortgages or otherwise to deal with financing problems, but that it went no further than to show authority to procure tenants, collect rents, make ordinary repairs and to manage the properties in respect to routine matters.

Although the case presents problems of some difficulty, and we have seen no other quite like it, we think there is no evidence which, in the circumstances here disclosed, tends to show that the defendant's promise was an original promise to pay his own debt rather than a promise to pay the debt of the trust.

*Exceptions overruled.*