**In re Edward ROLFE and Stephanie Rolfe, Debtors.**

**Bankruptcy No. 82–1074–HL.**

United States Bankruptcy Court, D. Massachusetts.

Oct. 27, 1982.

Melvin S. Hoffman, Boston, Mass., for debtors Rolfe & Micro Hydraulics Valve Company, Inc.

Donald J. Kaiser, Jr., (for Walter Mielko) Cosgrove & Eisenberg, P.C., Quincy, Mass., for Walter Mielko.

Joseph Szabo, Boston, Mass., trustee.

## MEMORANDUM ON CLAIM OF MICRO HYDRAULICS VALVE COMPANY, INC. AND WALTER MIELKO

HAROLD LAVIEN, Bankruptcy Judge.

This matter came to be heard on the debtors' objections to the claim of Micro Hydraulics Valve Co., Inc. and Walter Mielko. An evidentiary hearing was held on August 27, 1982 and the parties have filed post-trial briefs. Since most of the basic facts were not in dispute, the relevant findings of fact will be discussed in conjunction with the following rulings of law.

The claim is based on a corporate note and a mortgage of the individuals who controlled the corporation. The note is dated March 16, 1976 and provides that:

[F]or value received, the undersigned Micro Hydraulic Valves, Inc., promises to pay to the order of Micro Hydraulics Valve Co., Inc., at Braintree, Massachusetts, the sum of seventy thousand dollars ($70,000) with interest on the unpaid balance at the rate of ten (10%) percent per annum, for a period of five (5) years, with the right to prepay this note in whole or in part at any time without penalty. Payment of principal together with interest on the unpaid balance shall be made on the seventeenth day of May, 1976 and monthly thereafter on the seventeenth day of each month in equal installments of $1,526.89 until the principal of said note has been paid in full.

The note further provides that all amounts in arrears will bear interest at the rate of an additional one (1%) percent per month until finally paid. The note further states that it is secured by a second mortgage on certain machine tools and equipment and by a second mortgage on a certain parcel of real estate in Lincoln, Massachusetts. The note is signed by Edward Rolfe as President of Micro Hydraulic Valve, Inc. The mortgage provides that:

We, Edward Rolfe and Stephanie Rolfe, husband and wife as tenants by the entirety, both of Lincoln, Middlesex County, Massachusetts, for consideration paid, grant to Micro Hydraulics Valve Co., Inc., a corporation duly organized and existing under the laws of the Commonwealth of Massachusetts and having an usual place of business at Braintree, Norfolk County, Massachusetts with mortgage covenants to secure the payment of Seventy Thousand ($70,000) Dollars in five (5) years with ten (10%) per cent interest per annum, payable as provided in one note of even date, . . . .

The mortgage is also dated March 16, 1976 and is signed by Edward and Stephanie Rolfe, the debtors in this Chapter 13 proceeding.

The factual background to the creation of the note and mortgage is as follows. In 1976, Micro Hydraulic Valves, Inc., (Valves, Inc.) purchased the assets of Micro Hydrau-

lics Valve Co., Inc. (Valve Co., Inc.). The agreement of sale was signed by Edward Rolfe as President of Valves, Inc., and Walter J. Mielko as President of Valve Co., Inc. Rolfe and Mielko had negotiated the purchase and Valves, Inc. was formed by Rolfe sometime prior to the agreement to purchase the assets of Valve Co., Inc. Mielko worked for Rolfe until Rolfe locked him out in February, 1977. In March, 1978, Walter Mielko filed a suit against Valves, Inc., in Norfolk Superior Court alleging a violation of an employment contract. Valves, Inc., counter-claimed against Mielko and also named Micro Hydraulics Valve Co., Inc. as defendant on the counterclaim. Part of the relief requested in that counterclaim is that Mielko and Valve Co., Inc., be prohibited from transfering, selling, conveying, exchanging, or in any way disposing of the promissory note or foreclosing on the mortgage, which are now the subject of this Chapter 13 claim. No final judgment was reached in that suit and the filing of the Chapter 13 has stayed that proceeding.

■ The first objection that the debtors raise is that any claim of Micro Hydraulics Valve Co., Inc. (hereinafter Valve Co., Inc.) is unenforceable because on November 10, 1976, Valve Co., Inc., was dissolved by decree of the Supreme Judicial Court of Massachusetts. The claimant makes three arguments in response to the above objection. The first argument states that Valve Co., Inc. was duly dissolved on November 11, 1976, in accordance with Mass.Gen.Laws ch. 155 § 55 and pursuant to the plan of liquidation, corporate assets were transferred to the stockholders. Therefore, it is argued that the note running from Valve, Inc., to Valve Co., Inc., was transferred to Walter Mielko, who owned two-thirds of the stock, along with other corporate assets. This argument would uphold the claim of Walter Mielko as assignee of the corporate note. Second, as to the claim of Valve Co., Inc., it is argued that Mass.Gen.Laws ch. 155 § 51, would apply to maintain the corporate existence for purposes of defending its claim. Mass.Gen.Laws ch. 155 § 51 provides for the continuity of a dissolved corporation for

three years and then beyond three years only for the purposes of litigation brought by or against the corporation up to sixty days after final judgment in the suit. Final judgment cannot be reached in the Norfolk Superior Court case because the Chapter 13 has stayed that action. The debtors argue that the second mortgage was not at issue in the Norfolk action and therefore Valve Co., Inc., cannot enforce its second mortgage since the three year period has run. The debtors overlook the fact that the requirement of Mass.Gen.Laws ch. 155 § 51 is satisfied by `that litigation and the corporate existence continues to resolve a dispute revolving about the same sale of the business that occasioned the note and mortgage. Therefore, the debtors' technical argument does not appear to have any validity. Third, the claimant argues that the corporation can be revived pursuant to Mass.Gen. Laws ch. 156B § 108. Since, the claimant has not filed any papers showing that the corporation has been revived, I do not have to consider the merits of this argument. For the purpose of funding the debtors' Chapter 13 plan, it makes little difference whether this claim belongs to the corporation or its stockholders.

█ The debtors' next objection is that although they signed the mortgage, they did not sign the promissory note. Valves, Inc., signed the promissory note. Thus, the debtors argue that they received no consideration for the granting of the mortgage since they were not obligated on the note. It has long been held in this Commonwealth that consideration exists when stockholders guarantee a corporate debt. *Sheraton Service Corp. v. Kanavos,* 4 Mass.App.Ct. 851, 357 N.E.2d 20 (1976); *United States v. Farrington,* 172 F.Supp. 797 (D.Mass.1959).

Additionally, the debtors object to the claimant's mortgage alleging that the mortgage is based on an oral guarantee which is not enforceable due to the Massachusetts Statute of Frauds. Mass.Gen.Laws ch. 259 § 1. Section 1 provides in the relevant part that:

§ 1. Actionable contracts; necessity of writing. No action shall be brought;

Second, To charge a person upon a special promise to answer for the debt, default or misdoings of another;

Unless the promise, contract or agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or by some person thereunto by him lawfully authorized.

█ I find that the note and mortgage are sufficient writing to satisfy the Statute of Frauds. Although the note runs between the two corporations, the note states that it is secured by "a second Mortgage on a certain parcel of real estate in Lincoln, Massachusetts, a copy of which is appended hereto." The mortgage then states that it is "to secure the payment . . . as provided in one note of even date." These memorandums are sufficient to find an enforceable mortgage since it is signed by the parties to be charged and includes the terms of the agreement. *See Goulston Co., Inc. v. Swartz,* 1 Mass.App.Dec. 126 (1941). Further,

[w]here the party promising has for his object a benefit which he did not enjoy before his promise, which benefit accrues immediately to himself, his promise is original, whether made before, after, or at the time of the promise of the third party, notwithstanding that the effect is to promise to pay or discharge the debt of another. *Calamari, Contracts* § 19–6 (2nd Ed. 1977); *see also Nelson v. Boynton,* 44 Mass. (3 Metc.) 396 (1841).

An original promise is not within the Statute. *Id.* The object of the Statute is to secure valid evidence in a situation where a party, without apparent benefit to himself enters into a suretyship situation. *Nelson v. Boynton, supra.* However, in this case it is clear that the Rolfes were receiving a direct benefit, i.e., increased value in their ownership of the stock of the corporation. Therefore, I hold that there was no need for a separate written guarantee to satisfy the Statute of Frauds. *See P. Berry & Sons, Inc. v. Central Trust Co.,* 247 Mass. 241, 142 N.E. 58 (1924).

■ The debtors next object to the validity of the promissory note claiming that the note is usurious under Mass.Gen.Laws ch. 271, § 49. Chapter 271, § 49 is a criminal usury statute which prohibits the charging of interest greater than 20% per annum unless one first informs the attorney general that one intends to charge such a rate. The claimant concedes that the attorney general was not so informed. The claimant does argue that the note is not usurious. It is obvious that had the debtors continued to make the monthly payments on the note, the note would not be usurious because the contract rate of 10% per annum would apply and the question of arrearage interest would not have occurred.[1] However, once the arrearages start to accrue, if the rate of 1% compounded monthly was valid and enforceable, but for the usury contention, the nature of compounded interest sooner or later takes the effective rate of interest above the 20% rate. If, as the debtors argue, one determines the effective rate using the balance due of $47,329.51 rather than, as the claimant argues, using the original principal amount of $70,000, the effective rate will exceed 20% very quickly. Even using the original principal balance, the interest rate will eventually exceed 20%. Both parties argue that the Court should look to the average effective interest rate. The debtors' computations produce an average rate of 22.34% whereas the claimant's computations produce an average rate of 12.78%. Mass.Gen.Laws ch. 271 § 49 does not specify how to determine the effective rate or whether average rates apply. However, default provisions are to be included within the ambit of the statute, *Begelfer v. Najarian,* 381 Mass. 177, 409 N.E.2d 167 (1980), even though the debtors could avoid them by discharging their debts in a timely manner.[2]

■ No payments were made after March, 1978. I find the arrearage provision after default when no further payments are made unrelated to any added cost that might occur with late or partial payment. The arrearage charge after March 1978 is therefore void as an uncollectible penalty. *In re LHD Corporation,* 20 B.R. 722, 725 (Bkrtcy.S.D.Ind.1982). The method the claimant used to apply the penalty was to add the interest on each month's arrearage and then compute the next month's penalty on the new outstanding balance thus seeking interest on interest. The charging of interest on interest runs counter to the established law in this Commonwealth. *In re Kam Realty Trust,* 1 B.C.D. 1561 (Bkrtcy.D. Mass.1975); *Shapiro v. Bailen,* 293 Mass. 121, 123, 199 N.E. 315 (1936); *see also De-Cordova v. Weeks,* 246 Mass. 100, 103, 140 N.E. 269 (1923).

■ Although a court of equity may when necessary allow compound interest, *Ellis v. Sullivan,* 241 Mass. 60, 134 N.E. 695 (1922), the facts of this case do not call for such a result. In fact, the claimant now claims that $91,090.19 is due and owing on its note which had an original principal balance of $70,000 and a balance due of $47,329.51 on March 17, 1978 when the Rolfes and Valves, Inc., stopped making payments. I find that the arrearage provision is in the nature of a penalty and unreasonably disproportionate to the real damages from the breach and is void and unenforceable. *Begelfer v. Najarian,* 381 Mass. 177, 409 N.E.2d 167 (1980); *A–Z Servicenter, Inc. v. Segall,* 334 Mass. 672, 138 N.E.2d 266 (1956).

Therefore, the claim will be allowed at the contract rate of 10% per annum with no additional penalty interest allowed.[3] The

1. Mr. Rolfe testified that he did not realize until recently that there was an arrearage provision. However, in the actual payments that he made on the note, he did pay the late charges on several occasions. If it were relevant, I would find that the parties were equally experienced and knowledgeable about notes, mortgages, and interest rates and that this transaction was entered into voluntarily and at arm length with

no duress and with neither party in a position to dictate terms.

2. No expert testified on the effective rate of interest.

3. For differing views on the consequence if usury were found, *see In re Kam Realty Trust, supra; Begelfer v. Najarian, supra; Beach As-*

outstanding principal on March 17, 1978, the date the payments stopped, was $47,329.51. At a simple interest rate of 10% per annum, the amount outstanding as of October, 1982 would be $69,022.20.

As their final objection to the mortgage, the debtors contend that the mortgage is within Mass.Gen.Laws ch. 140 § 90A. Section 90A prohibits any person from charging more than one and one-half percent per month before default and one percent per month after six successive months of default on a loan of more than $1,500 secured by a second mortgage on a dwelling house assessed for not over $40,-000. The debtors submitted a clerk's certificate from the Town of Lincoln stating that the assessed value of the debtors' property in 1976 was $35,800. Even though the debtors have argued that the effective interest rate was around 21–22% per annum, and the claimant's 12.78%, I needn't decide which is the better mathematician because on its face, the terms of the note do not violate Mass.Gen.Laws ch. 140, § 90A. The note provided for only 10% interest per annum, not 18%, and one percent interest per month upon default. Although it doesn't include the six month default provision, on the facts of this case the rate as stated in the note would appear to be within limits. Further, I have already found that the arrearage interest should be void as a penalty and therefore, I would find that the mortgage does not violate the provisions of Mass.Gen.Laws ch. 140 § 90A.

The debtors also argue that the note and mortgage violate Mass.Gen.Laws ch. 140 § 90B. Section 90B provides:

§ 90B. Home mortgages; effect of failure to specify interest rate; prerequisites to foreclosure

If any note secured by such a mortgage and any such mortgage does not, among its provisions, specify as separate items the principal sum, the rate of interest or its equivalent in money, the period of the loan and the periodic due dates, if any, of principal and interest, the lender shall have no right to collect interest.

The debtors argue that since the note runs between Valve Co., Inc. and Valves, Inc., the note does not satisfy § 90B since they did not sign it individually. I am not sure this provision is intended to apply to a mortgage guaranteeing a corporate debt in a business context. However, I have already found that the note specifically mentions the mortgage and that the mortgage is valid security. Since the note sets forth all the terms required under § 90B, there is no violation of the statute and interest will be allowed as specified in this memorandum.

I find that the $69,022.20 is the amount of the mortgagee's claim as of October, 1982.

Since the debtors are in Chapter 13, it is now up to the debtors to come up with a plan which will satisfy this secured creditor in addition to their payments to their other creditors. Interest will continue to run at 10% per annum.

Since the result as it affects the plan and probably the claimants will be the same whether the secured claim belongs to Walter Mielko, individually, as a result of the liquidation, or to the corporation which maintains its corporate existence to defend its claim, the claim will be allowed in the corporate name as that is the payee on the note and mortgage.

The claimant properly seeks attorneys fees as the note provides for the payment of reasonable legal fees. The fee requested is for 56.3 hours at $100 per hour or $5,630. Most of this fee is for work relating to an attempt to foreclose on the mortgage prior to the filing of the Chapter 13. Some of the time billed is for travel to the Land Court. Additionally, a foreclosure proceeding should be relatively straightforward and certainly does not require such expertise of counsel as would warrant billing at $100 an hour. The Court is, of course, aware of the unfortunate bitterness that added to the unpleasantness and the legal work involved in these proceedings and that this case did have some unusual

*sociates, Inc. v. Fauser,* 9 Mass.App. 386, 401    N.E.2d 858 (1980).

circumstances. Therefore, I will allow $4,500 as a reasonable fee and expenses of $526.33, for a total of $5,026.33.