**In re TAVERN MOTOR INN, INC.**
**d/b/a Montpelier Tavern**
**Inn, Debtor.**

**Bankruptcy No. 83–89.**

United States Bankruptcy Court,
D. Vermont.

Oct. 24, 1986.

On Request To Correct Order
Jan. 8, 1987.

---

**140**

A. Field, Montpelier, Vt., for debtor.

S. Knapp, Dinse, Erdmann & Clapp, Burlington, Vt., for the Chittenden Trust Co. ("Chittenden").

A. Medor, Rutland, Vt., Trustee pro se.

J. Riley, McKee, Guiliani & Cleveland, Montpelier, Vt., for City of Montpelier.

## OPINION & ORDER FOR VALUATION OF SECURED CLAIM

FRANCIS G. CONRAD, Bankruptcy Judge.

### ORDER

Chittenden has applied for a valuation of its secured claim. We find the amounts submitted for principal, interest, appraisals, accounting services, and court reporting to be fair and reasonable. Because we hold that once a mortgagor declares the debtor's promissory note in default and the entire obligation due, the mortgagor's right to add charges for the late payment of monthly installments expires, we cannot grant the Chittenden's application for late fees incurred after the date of default. In the motion for valuation of its secured claim, the bank has also applied for attorneys' fees. Because the application submitted lacks sufficient specificity to allow us to evaluate the reasonableness of the legal fees, we reject the application with leave to submit a more detailed statement.

No party disputes Chittenden's secured status. Nor is there any dispute that Chittenden is oversecured. The debtor has objected to the late charges requested by Chittenden and to the reasonableness of its attorneys' fees.

Generally, subsection (b) of 11 U.S.C. § 506 codifies former law by entitling a creditor with an oversecured claim to any reasonable fees, costs, or charges provided in the agreement under which the claim arose. These fees, costs, and charges are secured claims to the extent that the value of the collateral exceeds the amount of the underlying claim. House Report No. 95–595, 95th Cong., 1st Sess. 356 (1977); Senate Report No. 95–989, 95th Cong., 2d Sess. 68 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787; 124 Cong. Rec. H 11,095 (Sept. 28, 1978); S 17,411 (Oct. 6, 1978). See also Bkr.L.Ed. Code Commentary and Analysis, § 21:52. Because the parties do not dispute Chittenden's secured status, we need to determine only the value of the secured claim. Chittenden presented what is believed to be the components of its secured claim.

### Principal, Interest, Appraisals, Accounting Service, and Court Reporters

■ All parties orally stipulated to the correctness, reasonableness, or fairness of the principal amount due, the interest thereon, and the cost appraisals, accounting services, and reporter services. We allow the accountants' fees because there was no objection to them, but we note in passing that they do not satisfy the requirements of Rules of Bankruptcy Procedure Rule 2016. Accordingly, we find the following amounts to be components of Chittenden's secured claim as of August 1, 1986:

| COMPONENT | AMOUNT |
|---|---|
| Principal on Note | $1,741,883.87 |
| Interest (10/01/83 – 07/31/86) | 39,843.21 |
| Taxes Paid (includes water & sewer) | 53,334.57 |
| Costs of Collection: | |
| Appraisals | 6,200.00 |
| Accounting | 1,900.00 |
| Court Reporters | 1,002.00 |
| TOTAL | $1,844,163.65 |

The per diem interest from 08/01/86 is $582.72088.

## Late Charges

The Chittenden, which holds a first mortgage on the Tavern Motor Inn, the principal asset of the debtor's estate, has asked for accrued late fees under the mortgage note. We held an evidentiary hearing on this and other matters on August 18, 1986. After the hearing, the debtor submitted a Memorandum opposing the Chittenden's application, the bank submitted a Reply Memorandum, and the debtor responded to the Reply. We make our findings and draw our conclusions based on the testimony at the hearing, the documents of record, and the parties' memoranda.

The Chittenden took a mortgage note from the debtor on December 15, 1980. On April 29, 1983, the bank accelerated the note and demanded payment in full. The note provides that:

> Borrower shall pay to the Note Holder a later charge of four (4) per cent of any installment not received by the Note Holder within fifteen (15) days after the installment is due.

Relying on this language, the bank has asked for $54,213.39 in late fees.

■ The Bankruptcy Code allows an oversecured creditor interest on its claim, "and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose," 11 U.S.C. § 506(b). Under the statute, if (1) the creditor is oversecured, (2) the charge is reasonable as a matter of State law, and (3) the debtor has specifically agreed to the payment of a delinquency charge, the bank may recover the charges. *Mack Financial*

*Corporation v. Ireson,* 789 F.2d 1083, 1084 (4th Cir.1986); *In re Richardson,* 63 B.R. 112, 113 (Bkrtcy.E.D.Pa.1986). Since the value of the Tavern Motor Inn, the mortgaged property, exceeds the amount of the Chittenden's claim, and since we have discovered no prohibition against such late charges in Vermont law, our task is to construe the agreement between the bank and the debtor.

■ The debtor argues convincingly that, under the plain language of the mortgage note, the imposition of late charges is contingent on the debtor's breach of an obligation to pay installments within fifteen days. Acceleration of the note obliges the debtor to pay the entire outstanding debt, vitiating the requirement of monthly installments. The Chittenden's witness, Ms. Alice Durkin, testified on behalf of the bank that, once the loan had been declared in default and payment in full was due, the bank would refuse to accept payments by the debtor of the monthly installments, but it would still insist on collecting its late charges. The bank may not have it both ways. The bank may not deny the debtor the right under the mortgage note to make monthly installments and continue to insist on its own right under the note to impose monthly late charges. We hold that the agreement between the Chittenden and the debtor does not provide for late charges after the loan has been accelerated and the entire balance of the debt is due. Compare *In re Rolfe,* 25 B.R. 89, 94 (Bkrtcy.D.Mass. 1982), *aff'd* 710 F.2d 1 (1st Cir.1983) (holding arrearage charge after default void as an uncollectible penalty). See *In the Matter of LHD Realty Corporation,* 726 F.2d 327, 333 (7th Cir.1984). In a somewhat Delphic decision, the Court of Appeals reversed the District Court and affirmed on procedural grounds the Bankruptcy Court's holding allowing late charges prior to acceleration, but not after acceleration of a promissory note. See *In the Matter of LHD Realty Corporation,* 20 B.R.722 (Bkrtcy.S.D.Ind., Indianapolis Division

1982), *aff'd* in part, *reversed* in part, and *remanded,* 726 F.2d 327 (7th Cir.1984).[1]

■ As an additional ground to buttress its right to collect post acceleration late charges, the Chittenden refers to two Court approved stipulations, dated June 8th and November 30th 1983, in which the debtor agreed to make monthly installments to the Chittenden. The bank argues that the late payments under these stipulations caused the bank to incur additional loan administration expenses for which it is entitled to be reimbursed at the agreed rate. The difficulty with the bank's reliance on these stipulations is that neither contains any reference to late charges. The right to collect late charges and the circumstances in which the right may be exercised must be included in the parties' agreement. Had the bank and the debtor agreed in the 1983 stipulations to late charges, the language of the stipulations would have reflected this understanding. We cannot transpose provisions of one agreement into another negotiated three years later. We find that Chittenden is entitled to late charges of $26,393.01 for those installments not paid within fifteen days in the period before it accelerated the mortgage on April 29, 1983.

### Attorney's Fees

The Chittenden has applied for attorney's fees and the debtor has raised several objections to the application. The debtor specifically objected to ministerial work being charged out at high rates. Like the claim for late charges, the bank's claim for attorneys' fees lies in contract. The installment note between the parties at paragraph (1) states in part:

"... If this note is placed in the hands of an attorney for collection, the Note Holder shall be entitled to collect all reasonable costs and expenses of collection, and lawsuit, if any, but not limited to reasonable attorney's fees."

At the evidentiary hearing on August 18, 1986 we heard testimony from Attorney Robert Opel and Attorney Joseph Palmisano about the reasonableness of counsel's hourly rates, and from Attorney Opel about the reasonableness of the work performed. In support of the application, counsel has also submitted an affidavit and copies of its bills to the Chittenden. No party objected to the rates charged or the reasonableness and necessity of the work performed.

■ Under 11 U.S.C. § 506(b), only "reasonable" fees and expenses may be allowed an oversecured creditor. See *In re Melson,* 54 B.R. 47, 49 (Bkrtcy.D.Del.1985); *In re Ladner,* 50 B.R. 85, 89 (Bkrtcy.S.D.Miss. 1985). Compare *In re Continental Vending Corporation,* 543 F.2d 986, 994 (2d Cir.1976). Rules of Bankruptcy Procedure Rule 2016 requires a detailed statement of services rendered, time expended, and expenses incurred when a person is seeking reimbursement for necessary expenses from the estate. Even though they represent a secured creditor, Chittenden's attorneys are within the purview of this rule.

■ We cannot determine the reasonableness of attorney's fees without adequate documentation. See *In re Dawson,* 32 B.R. 179, 182 (Bkrtcy. W.D.Mo.1983). Numerous items in the statement submitted in support of the Chittenden's legal fees are not identified. We are not vouchsafed the purpose of telephone calls or conferences, for example, nor the subject matter of the "research." Several listings lump a variety of services together without

---

1. Chittenden, in its memorandum of law, asks us to interpret *LHD Realty Corporation, supra,* as holding that a creditor has a right to collect late charges to cover the additional expense of handling late payments actually made by the debtor. Under the facts of LHD Realty Corporation, supra, that is probably a correct interpretation of the case. The facts of this proceeding are different. The commercial real estate mortgage note at issue here merely recites "Borrower shall pay to the Note Holder a late charge of *four (4)* (handwritten) percent of any installment not received by the Note Holder within *fifteen (15)* (handwritten) days after the installment is due." There is no mention of additional expense. Our holding today is specifically limited under the terms of the note in issue to late charges on installments contractually accrued and calculated to the date the note is accelerated.

allocating the time expended on each. Some services may have been performed for a pre-petition workout.

■ The Chittenden suggests that the standard for reviewing the allowance of attorney's fees to a secured creditor under 11 U.S.C. § 506(b) is commercial reasonableness. *In re Hart Ski Manufacturing Co., Inc.*, 9 B.R. 397 (Bkrtcy.D.Minn.1981). Without deciding the correct standard to apply, we require greater specificity before we can determine whether the legal fees are reasonable. See *In re WHET, Inc.*, 58 B.R. 278, 281–82 (Bkrtcy.D.Mass.1986).

Although we cannot approve Chittenden's application for legal fees in its present form, we grant the bank leave to submit a more detailed application. Now, Therefore,

It is ORDERED that the secured claim of the Chittenden Trust Company be and hereby is partially valued at $1,870,556.66, and it is FURTHER ORDERED that the Chittenden Trust Company is hereby directed to submit to this Court a more detailed documentation of its attorneys' fees by November 15, 1986.

## ON REQUEST TO CORRECT ORDER

We have before us a request by the Chittenden Trust Company (CTC) to correct our Order of October 24, 1986, valuing its secured claim at $1,870,556.60, because we relied on an incorrect affidavit. In our October 24, 1986 Order, we also did not approve CTC's request for legal fees because they lacked specificity. We granted CTC additional time to submit more detailed documentation to support its claim for legal services. We have received this documentation.

It is clear from the Court's file that, when we issued the Order, we relied on a copy of an affidavit of amount due, dated August 1, 1986, which CTC submitted to us, and not the later affidavit, dated August 18, 1986, which was entered into evidence.

We have reviewed the evidence submitted by CTC to support its claim for attorney's fees. There is no objection to the rates charged or to the reasonableness and necessity of the work performed. The debtor objects to the "fixed fee of so much per hour without any regard whatsoever as to the nature of the work performed." Debtor's Memorandum at pg. 1. As we understand the debtor's objection, it asks us to allow a lower rate for ministerial work and for work such as reading correspondence, telephone conversation, review, and miscellaneous meetings. For support, the debtor directs us to a compensation Order in this case, dated April 26, 1985, citing *In re International Coins and Currency, Inc.*, 22 B.R. 127 (Bkrtcy.D.Vt.1982), which indicates that services consisting of meetings, telephone conferences, and travel are not compensable at the same rate as time spent at hearings and in litigation.

■ We agree with that part of the holding in *International Coins and Currency, Inc., supra,* which states that ministerial functions should be billed at a lower rate than those of a strictly legal nature. We cannot, however, agree with that part of the holding which relies on *In re Hamilton Hardware Co., Inc.*, 7 B.C.D. 963, 4 C.B.C.2d 699, 11 B.R. 326 (Bkrtcy.E.D.Mi. 1981) or *In re Jones*, 4 C.B.C.2d 1447, 13 B.R. 192 (Bkrtcy.E.D.Va.1981) for the general proposition that making and receiving telephone calls, writing and receiving letters, performing research, drafting pleadings, and attending meetings of creditors are largely routine and ministerial, and should therefore be compensated at a lower rate than "truly" legal services, regardless of the experience and competence of the attorney who performs the services. *In re Jones, supra,* at 1450, 13 B.R. 192, holds that "travel time, negotiations, preparations of legal documents, and actual trial time *need not be* [emphasis added] at the same hourly rate."

■ The word "ministerial" conjures in our mind the type of mechanical task that requires little or no training to perform adequately. Writing and receiving letters, doing research, drafting pleadings, and attending meetings of creditors

are the ingredients of a bankruptcy practice, the staple of the bankruptcy lawyer. This is not to say that the work should not be delegated to an appropriate level of capability; but that to make the blanket proposition that the areas listed above are routine and ministerial, and therefore not compensable at a fair hourly rate, is to underestimate the job of the bankruptcy practitioner.

Finally, we cannot agree with the debtor's assertion that litigation services are necessarily compensable at a higher rate than other legal services. Lawyers are certainly free to place a different value on different classes of services they provide. We hold today only that one of the standards of rate differentiation is the objective difference between ministerial and legal work as set out above. See *In re Jones, supra*, (travel time, negotiations, preparation of legal documents, and actual trial time need not be at the same hourly rate.)

We also do not agree with that part of the holding in *International Coins and Currency, Inc., supra*, which appears to countenance a blanket payment for travel time. Not all travel time is compensable in bankruptcy. While we recognize the reality that a lawyer's time is the lawyer's stock-in-trade, we believe that local travel time is an overhead expense built into a lawyer's hourly rate. Accordingly, it has been this Court's policy not to allow for local travel time under one hour, without a special showing. On the other hand, we have allowed reasonable travel expenses, including mileage at 20.5 cents a mile, parking, and tolls. These are variable expenses, not generally foreseeable, nor commonly a component of overhead.

Because there was no objection to the reasonableness and nature of the work performed, we do not decide today what other standards we would apply in reviewing an allowance of attorney's fees to a secured creditor under 11 U.S.C. § 506(b).

Based on this analysis and the evidence presented, we find the following amounts to be components of CTC's secured claim as of August 18, 1986:

| COMPONENT | AMOUNT |
|---|---|
| Principal on Mortgage Note | $1,751,161.37 |
| Principal on Installment Note | 12,440.82 |
| Interest on Mortgage Note (10/01/83 – 07/31/86) | 151,307.54 |
| Interest on Installment Note | 536.82 |
| **COSTS OF COLLECTION** | |
| Appraisals | $6,200.00 |
| Accounting | 3,400.00 |
| Court Reporters | 1,002.00 |
| Legal | 52,624.87 |
| | 63,226.87 |
| **TOTAL** | **$1,978,673.42** |

The per diem interest from August 18, 1986 on the mortgage note is $582.72088. The per diem interest from August 18, 1986 on the promissory note is $5.3682. Now, Therefore,

We ORDER that the October 24, 1986 Order valuing the Chittenden Trust Company's secured claim be AMENDED to $1,978,673.42.

### APPENDIX A
### FEES AND EXPENSES DISALLOWED

| DATE | ITEM | AMOUNT | CODE |
|---|---|---|---|
| 03/03/83 | Research | $ 285.00 | 1 |
| 03/03/83 | Research | 105.00 | 1 |
| 03/03/83 | Research | 100.00 | 1 |
| 03/07/83 | Research | 105.00 | 1 |
| 05/16/83 | Conference | 15.00 | 1 |
| 05/19/83 | Conference | 10.00 | 1 |
| 06/07/83 | Travel | 70.00 | 2 |
| 06/15/83 | Travel | 70.00 | 2 |
| 06/08/83 | Miscellaneous | 11.00 | 3 |
| 07/08/83 | Conference Call | 35.00 | 1 |
| ? /30/83 | Travel | 70.00 | 2 |
| 01/16/83 | Lunch | 9.00 | 3 |
| 01/19/84 | Miscellaneous | 293.70 | 1 |
| 02/14/84 | Travel | 70.00 | 2 |
| 03/05/85 | Transcript | 150.00 | 4 |
| ? /21/85 | Review Permit & Title Policy | 75.00 | 1 |
| ? /17/85 | Travel | 75.00 | 2 |
| 03/07/86 | Proof of Claim | 51.00 | 5 |
| 04/02/86 | Telephone Call | 34.00 | 6 |
| 06/10/86 | Travel | 150.00 | 2 |
| 08/13/86 | Travel | 170.00 | 2 |
| 08/18/86 | Travel | 85.00 | 2 |
| 09/22/86 | Travel | 85.00 | 2 |
| 09/29/86 | Travel | 60.00 | 2 |
| 09/29/86 | Travel | 85.00 | 2 |
| 10/03/86 | Travel | 60.00 | 2 |
| **TOTAL DISALLOWED** | | **$ 2,328.70** | |

EXPLANATION OF DISALLOWANCE CODES

CODE 1 — Insufficient Description

CODE 2 — Apparent Local Travel Not Compensable

CODE 3 — Personal Expenses Not Compensable in Bankruptcy

CODE 4 — Compensated under Court Reporter Services as a Component of Claim

CODE 5 — Not Related to this Case

CODE 6 — Not a Legal Service Compensable in Bankruptcy